# Thomson's Appeal.

Testator gave and bequeathed all his estate, real and personal, to trustees, "the income from which shall be devoted to purposes thereinafter mentioned, with power to sell any of his property and reinvest the proceeds whenever, in the judgment of the trustees, the interest of the trust will be promoted." Immediately thereafter he directed that so much of the proceeds of the said property shall be paid to his widow as she may deem "necessary for the maintenance of herself and his niece; they living in such style as she may think best to promote their happiness and comfort during her lifetime." After several annuities the testator then declared that the trustees should appropriate the remainder of the net income of his estate, after the payments specified, to a charitable purpose. In a codicil the testator desires his niece to be treated and regarded as if she really was his child, "receiving during her lifetime such income from my estate as if she really was my child," and in a second codicil directed that she should take "out of the income" of his estate all that "she requires to render her more than comfortable in her housekeeping during her lifetime." It was contended that by his use of the word "proceeds" the testator intended that the widow might take both principal and income of his estate if, in her discretion, she deemed it necessary to enable her to live "as she may think best to promote their happiness and comfort during her lifetime." *Held*, that it was impossible to refer the word "proceeds" to anything but the income; that the testator considered himself throughout the will and codicils as dealing only with the income of the estate, the corpus or principal being vested in the trustees for his ultimate purpose, the charity.

[Thomson's Appeal.]

February 3d 1879.    Before SHARSWOOD, C. J., MERCUR, GOR-
DON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Philadelphia county:* Of
January Term 1879, No. 97.

The appeal of Lavinia F. Thomson from the decree of the court
dismissing her exceptions to the supplemental report of the auditor
in distribution, in the estate of J. Edgar Thomson, deceased, and
in confirming said report.

The administrators of the estate of said decedent filed in the Or-
phans' Court of Philadelphia their accounts, which by the consent of
the parties in interest were referred to Joseph A. Clay, Esq., as
auditor, with power to audit, settle and adjust the same, and to
make distribution of the money in the hands of the accountant.

Mr. Thomson died on May 27th 1874, leaving the following
will and codicils:

"I, J. Edgar Thomson, of the city of Philadelphia, and state
of Pennsylvania, do make this my last will and testament.    I give
and bequeath all of my real and personal estate, except household
furniture, to Lavinia F. Thomson, George B. Roberts and Wil-
liam M. Spackman, in trust: the income from which shall be de-
voted to the purposes hereinafter mentioned.

" The said trustees to have full power to sell any of my property
and reinvest the proceeds whenever in their judgment the interest
of the trust will be promoted thereby.

" The estate to be subject to the following payments:

" First.  To so much of the proceeds of said property as my
dearly beloved wife, Lavinia F. Thomson, may deem necessary
for the maintenance of herself and my dear niece, Charlotte F. Fos-
ter, they living in such style as my said wife may think best to
promote their happiness and comfort during her lifetime.    If my
niece, Charlotte F. Foster, should survive my wife, then I direct
that there shall be paid to her as long as she may live, the sum of
two thousand dollars per annum.    To my wife, Lavinia F. Thom-
son, I give absolutely all of my household furniture, books and
ornaments.

" Second.  To each of my sisters, Anna and Mary Adeline.
Thomson, during the life of each of them, the sum of one hun-
dred dollars per month.

" Third.  To my nephew, Edgar Levis Thomson, as long as he
may live, the sum of one hundred and fifty dollars ($150) to be paid
to him monthly.

" Fourth.  To his wife, Hattie B. Thomson, all sums that may be
charged against her upon my books at the time of my decease.

" Fifth.  To all the household servants that may be in my em-
ployment at the time of my decease, as soon as may be convenient
to the trustees, the sum of two dollars and fifty cents per month for
each month that each of them may have been in my service, as an
acknowledgment of their faithfulness.

[Thomson's Appeal.]

" The said trustees to appropriate the remainder of the net income of my estate after the payments above specified, or so much of it as may be judiciously applied thereto, to the education and maintenance of female orphans of railway employees whose fathers may have been killed while in the discharge of their duties : preference to be given, first, to the orphans of the employees engaged upon the Pennsylvania Railroad; second, to those of the Georgia Railroad, between Augusta and Atlanta, Georgia; third, to those of the lines controlled by the Pennsylvania Railroad Company by lease or otherwise; fourth, to those of the employees of any other railroad company of the United States of America.

" If application shall not be made from these sources in number sufficient to consume the annual income of the trust, the said trustees *may* at their option reinvest the surplus, or receive the female orphans of any other employees of railway companies of the United State upon the same terms and conditions as the orphans of those killed in the service of the company.

" The said trustees shall prescribe all rules and regulations that may be deemed necessary to carry out the objects of this trust, and rent or erect such buildings as may be required for said purposes. They may receive bequests or donations to increase the means to be applied to the objects of said trust.

" The said trustees may at any time add to their number, not exceeding six additional members, who shall perpetuate their existence by filling all vacancies that may occur in their number from death, resignation or otherwise, by electing such persons as they may deem best suited to carry out the objects of this trust, by a vote of majority of two-thirds of their number, any person, male or female, of high character for integrity and sound judgment.

In witness whereof, I have hereunto set my hand and seal, this twentieth day of December, Anno Domini one thousand eight hundred and seventy-one.        J. EDGAR THOMSON.        [SEAL.]

" Signed, sealed, published and declared by the above-named J. Edgar Thomson, as and for his last will and testament, in the presence of us, who in his presence and in the presence of each other and at his request, have hereunto subscribed our names as witnesses.

                                        HERMAN J. LOMBAERT,
                                        HENRY C. SPACKMAN.

By a codicil the testator directed :

" This is a codicil to my last will and testament, made in sickness of body, but with a clear understanding and full testamentary intention.  I desire my dear niece, Lottie Foster, but to whom I cherish the feelings of a father, to be so treated and regarded in the law as if she were really my child, receiving during her lifetime such income from my estate as if she were really my child, and I postpone the operation of the trusts of my will so as fully to effect this result until her decease, upon which event they are forthwith to take full effect as expressed in the will.

" Witness my hand and seal, this twenty-fourth day of May, A.
D. 1874.                                        (Written with lead pencil.)
                                 J. EDGAR THOMSON.   [SEAL.]

" Witnesses :
        JAMES KITCHEN,
        C. B. SMITH.

" J. Edgar Thomson by Theo. Cuyler the name being thus placed
at his request, he being too feeble to sign the same, except in pencil
as above."

And by a second codicil interpreted the foregoing codicil as fol-
lows :

" The codicil which I added to my will the other night, May
24th, means that I wish my niece, Charlotte F. Foster, to be con-
sidered as my daughter, and to take out of the income of my estate
all that she requires to render her more than comfortable in her
housekeeping during her lifetime.

" I do not desire to postpone by it the operations of the trusts of
my will, except so far as may be necessary to secure the above object.

" Philadelphia, May 26th 1874.

                                 C. B. SMITH,
" Witness :                   For J. EDGAR THOMSON.
        B. B. McNALLY.

                          The name being thus written, he
                          being too weak to sign himself."

It was claimed on the part of the widow, Mrs. Thomson, that
she was entitled to the principal and income of the estate, if she
deemed it necessary to enable herself and daughter to live in the
style they thought best to promote her own and her niece's happi-
ness and comfort during her lifetime, this claim being based on the
use of the word "proceeds" in that part of testator's will which
directs that payment should be made to her of so much of the pro-
ceeds of said property as she may deem necessary, &c.

The following are the material portions of the auditor's report,
bearing upon this question :

" The intentions of the testator, to any one examining the will
dispassionately, are obvious enough.   He designed to found a
charity for the orphan children of employees of railroads ; while,
at the same time, he wished to make ample provision for his wife
and niece, for their lives.   About this there can be no real question.

" To effect his purposes, he gives, *in the first place*, and by une-
quivocal words, his *entire estate*, real and personal, to trustees, with
a power to sell.   This gift is absolute, and all the other provisions
of the will are subordinate to it.   He then subjects the estate to
' the following payments : first, to so much of the proceeds of said
property as my dearly beloved wife, Lavinia Thomson, may *deem
necessary* for the maintenance of herself and my dear niece, Char-

[Thomson's Appeal.]

lotte F. Foster, they living in such style as my said wife may think best to promote their happiness and comfort during their lifetime,' and if Miss Foster should survive Mrs. Thomson, the testator gives her an annuity of two thousand dollars for life.

"This is the first provision to which the absolute devise to the trustees is made subject.

"Next he gives annuities to his two sisters and his nephew, and absolute legacies to his servants, and these form the second provision, out of the absolute devise. Finally, by the first and second codicils, he desires 'his niece, Lottie Foster, to be treated, in law, as if she were really my child;' receiving, during her lifetime, such income from my estate, as if she were really my child,' and the operations of the trust are postponed, 'so as fully to effect this result, until her decease.'

"By the second codicil these provisions are so modified as to give Miss Foster, who is to be considered as his daughter, the right to take '*out of the income of the estate* all that she requires to make her more than comfortable in her housekeeping during her life,' and the postponement of the operations of the trust is only to take place so far 'as may be necessary to secure the above object.'

"Thus, while the provisions of the will itself in favor of Miss Foster were dependent on Mrs. Thomson's discretion, the appropriations for her by the codicil are totally independent of any power given to the widow, to whom no reference is even made.

"The words of the devise to the trustees are unequivocal. They are: 'I give all my real and personal estate, except household furniture,' to the trustees nominatim; 'the *income* from which shall be devoted to the purposes hereinafter mentioned.' These words are apt, and clearly expressed. * * *

"As to the word 'proceeds,' upon which great stress has been laid, it may be taken in its general meaning, to include both capital and income; but this meaning is necessarily subordinate to the general intention of the will, and it is restricted here by the first provision indicating the purposes of the trust. The testator says, 'the trustees are to appropriate the remainder of *the net income, after* the payments above specified,' *i. e.*, the payments to Mrs. Thomson and the annuitants, or 'so much of it,' the income, 'as may be judiciously applied thereto,' to the education, &c., of the beneficiaries under the trust. The precedent payments are thus distinctly referred to the income, and the surplus, still of the income, is to be applied to the purposes of the trust. The capital of the proceeds, given to the trustees absolutely, is not disturbed by any of these appropriations. It is, however, conclusive as to the claim founded upon the use of the word in question, that the power of sale conferred upon the trustees is *discretionary*, and that until it shall be exercised, there can be no proceeds, whatever meaning may be attributed to the word. The claim, therefore, if valid, would be premature, but it cannot be sustained on other grounds. * * *

[Thomson's Appeal.]

" There is also no foundation for the claim that the will gives Mrs. Thomson a life-estate with a power of disposal of the principal of the will. No trace of such a power is to be found in any part of the will. The limited interest she has in the income has been already demonstrated. She can have, as it appears to the auditor, no right to any part of the principal, much less to appoint the whole capital by will. *   *   *

" To carry out the construction for which the counsel for the ladies contend, would be to enforce artificial rules of law, such as the rule that nothing can be given after a discretionary power of use has been conferred, which often defeat the clearest intentions of a testator. Certainly they should not be extended to a case where such provisions are partial, and where discretionary powers exist which might possibly result in direct conflict."

On behalf of Mrs. Thomson, the following among other exceptions were filed, alleging error :—

1. Because the auditor has decided that Mrs. Thomson, the testator's widow, does not take the whole personal property under the terms of the will subject to the testator's debts and legacies, and subject to the rights of Mrs. Charlotte F. F. Reed. *   *   *

3. Because the auditor has decided that Mrs. Thomson and Mrs. Reed are not together entitled to the whole personal property of the testator, subject as aforesaid. *   *   *

9. Because the auditor has awarded the balance of the principal to the trustees under the will, to be held by them for purposes of the charitable trust, and not in any way subject to so much of the proceeds thereof as this exceptant deems necessary for the maintenance of herself and of the testator's niece, although she has designated that amount in accordance with the terms of the will.

After argument upon these exceptions, the court (Hanna, P. J.), in an opinion, inter alia, said : " In seeking for the intention of the testator, the cardinal principle must be remembered, that it is to be gathered from the entire will, not from detached clauses, sentences, or words, but the whole must be taken together. This is too familiar to need any citation for its support. Upon a careful consideration of the instrument it will first be noticed that testator vests his entire estate, excepting only his ' household furniture, books and ornaments,' in three trustees, and imposes upon them such duties as pertain to an active trust, with ' full power to sell any of my property and re-invest the proceeds whenever in their judgment the interest of the trust will be promoted thereby.' Testator next subjects his estate in the hands of the trustees to the following payments, or, in other words,, declares the following uses and trusts, and first in natural order of the settlement of the estate, to pay the legacies to his household servants, then, out of the income, to pay the annuities to the sisters and nephew of testator, and then so much as his widow may deem necessary for the maintenance of

[Thomson's Appeal.]

herself and niece, even if her requirements absorb the whole remaining income, leaving none to be applied to the charitable purposes contemplated.

"It was strenuously contended, on behalf of the widow, that she was entitled to the principal and income of the estate, if, in her discretion, the same were necessary to enable herself and niece to live in such style as she 'may think best to promote their happiness and comfort during her lifetime,' the argument being based upon the use by testator of the word 'proceeds' in the item of the will directing the payment to his wife. Carried to its logical sequence, this view, if correct, would not only destroy the charity for the orphans of railway employees, but also the annuities to the sisters and nephew of the testator. This certainly was never in the mind of testator, and the auditor was correct in holding that the word 'proceeds' was employed by him as synonymous with 'income.' This is evident from the language used in other portions of the will. In its first clause testator says the 'income from which,' *i. e.*, from his real and personal estate, 'should be devoted to the purposes hereinafter mentioned.' Then follows the purposes to which the income is to be applied, and finally the trustees are 'to appropriate the remainder of the net income to the maintenance of the charity.' And in addition it is to be observed that the only absolute bequest to testator's wife is of his 'household furniture, books and ornaments.' We therefore conclude it is clear that testator vested his estate, real and personal, in the trustees, in trust, to pay, first, out of the income, the legacies; second, the annuities, and the entire remaining income, if required, to his widow, for the support of herself and niece; third, after the death of the widow to pay to testator's niece an annuity of $2000 for life; fourth, and to apply the remaining income, if any, to the support of the charity. * * *

"Now, construing together the will and codicils, and harmonizing those provisions which appear to be contradictory and inconsistent, we think the intention of the testator is clear, that the trustees are entitled to the corpus of the estate, in trust, to pay so much of the income remaining after the payment of the legacies and annuities, as the widow during her life may consider necessary for the maintenance and support of herself and niece, and the remaining income, if any, to apply to the purposes of the charity contemplated by testator.

"And further, upon the death of the widow, to pay to the niece of testator such portion of the income after payment of the annuities as she may, in her discretion, deem necessary or require to render her more than comfortable in her housekeeping during her lifetime, the surplus income, if any, to be applied to the charitable purposes of the will. While we agree, therefore, with the auditor, that the claim of the widow to be awarded the corpus or principal

of the estate cannot be sustained, yet we are of the opinion that testator has conferred upon his wife, and, after her death, upon his niece, an absolute and unfettered discretion, as to the proportion of the income of the estate they will respectively require for their maintenance, and upon the exercise of which the court has no authority to impose any restrictions. This we consider to have been in the mind of the testator and to form the scheme of his will.

" We are, therefore, of the opinion that the balance of the principal of the estate should be awarded to the trustees, to be held and applied to the uses and purposes of the trusts declared by testator, and that the balance of the income, after the payment of the legacies bequeathed, should also be awarded to the trustees for the payment of the annuities, and to the widow of testator of such sum or sums as she, in her discretion, may require for the maintenance of herself and niece, now Mrs. Charlotte F. F. Reed, the balance of the income, if any, to be expended in support of the charitable trust declared in the will."

The court then dismissed the foregoing exceptions, and recommitted the report to the auditor to report in accordance with the above opinion. The auditor made a supplemental report, to which the appellant filed the following exceptions alleging error:—

1. Because the auditor has decided that Mrs. Thomson, the exceptant, is not entitled to the corpus of the testator's personalty (but merely to the income thereof), subject to the testator's debts and legacies, and subject to the rights of Mrs. Charlotte F. F. Reed.

2. Because the auditor has not decided that Mrs. Thomson and Mrs. Reed are together entitled to the whole of the corpus of testator's personal estate, subject to debts and legacies, except the legacy to the charity.

3. Because the auditor has not decided that Mrs. Thomson is entitled, to the exclusion of the charity (but subject to all other legacies and to the testator's debts), to the whole of testator's personal property, by the provisions of his will, on demand made by her to that effect, which demand has been made, such right being further limited by the codicils to testator's will, so as to subject the said personalty to a charge of two-thirds of the net income thereof during Mrs. Reed's and Mrs. Thomson's joint lifetime, and to the charge of the whole net income after Mrs. Thomson's death, during Mrs. Reed's lifetime, to be paid to the latter, if she requires it, but to no other charge whatever; whereas the auditor has refused to award any part of the principal of said personalty to this exceptant.

4. Because the testator, by his will, subjected his estate to the payment, first, of so much of the proceeds of all his property (excepting household furniture), as this exceptant might deem necessary for the maintenance of herself and Mrs. Charlotte F. F. Reed, they living in such style as this exceptant might think best

to promote their happiness and comfort during her lifetime. And after providing that the estate should be further charged with the payment of certain legacies, the testator, in his will, further directed that the remainder of the net income of his estate, after the payment above specified, or so much as might be judiciously applied thereto, should be appropriated to a charity. Yet the auditor has decided that under these provisions of the will, the testatrix was not entitled to any portion of the corpus of the personal estate, but only to a portion of the income thereof.

The auditor overruled these exceptions and the court sustained this action, and confirmed his report.

Mrs. Thomson then took this appeal, alleging that the court erred in dismissing the exceptions both to the first and supplemental reports.

*A. Sydney Biddle* and *George W. Biddle*, for appellant.—Mr. Thomson's idea was to place the disposal of his whole fortune in the hands of his wife. He intended that as between her and the residuary legatee, the charity, the latter should receive anything or nothing, as Mrs. Thomson decided. This was equally true of principal and of income. He desired her to take from his property whatever she thought would make her happy.

The testator uses a word, which may be ambiguous, and by the context defines it meaning. He then repeats two lines below, the same word, and the question is, did he use it in the same signification?

The rule is that where words in a will are defined by the context, and then repeated in a position which by itself would leave it in doubt which of two meanings is to be applied, that is chosen which the testator has given to the same words in a different part of his will.

" This principle of construction was adopted and applied in Seibert *v.* Butz, 9 Watts 490, and indeed is so reasonable that it needs no citation to sustain it." Per SHARSWOOD, J., in Ingersoll's Appeal, 5 Norris 240; and that case was decided on that ground.

It is no avoidance of the difficulty to show that other parts of the will become inoperative by giving to the testator's language his own and its natural meaning. We admit that. It is quite plain that the testator intended to give his widow an unlimited discretion to dispose of his residuary estate, and what she did not dispose of he intended should go elsewhere. Possibly he could make such a disposition. Mrs. Thomson's estate would be a power, which, if unexercised, would leave the bequest over valid. But she does use her power. She claims the whole property. A claim of a legatee's rights in court is equivalent to a requisition upon trustees for the full amount to which the legatee may be held to be entitled : Irwin *v.* Farrer, 19 Ves. 86.

*William A. Porter*, for appellees.—Such an intention as is here claimed to vest in Mrs. Thomson the principal of the entire estate, is inconsistent with, and contradictory to, all the other parts of the will and the codicils thereto.

1. It is inconsistent with the direction to the trustees to make the other four payments referred to—namely, an annuity to each of the testator's two sisters, an annuity to his nephew, a bequest in favor of his nephew's wife, and certain payments to his household servants; for if he has given to his wife the whole of the estate, out of what fund can the trustees make these payments?

2. An intention to give to Mrs. Thomson the whole of his estate is inconsistent with and contradictory to the first codicil to the will, wherein the testator desires his niece to receive during her life such income from his estate as if she were really his child, and also contradictory to the second codicil, wherein he desires that his niece shall take out of the income of his estate all that she requires to render her more than comfortable in her housekeeping during her lifetime. If he intended that his wife should have all, from what fund could his niece have obtained her portion?

3. Such a disposition of the estate as is here contended for would render impossible of execution the trust for which the trustees were chiefly appointed—namely, the founding and conducting of a charitable institution, on a plan which the testator sets out at length in his will with so much particularity.

4. The power of sale given by the will to the trustees can be exercised by them only, and at their discretion. The proceeds, should any arise, are directed by the testator to be re-invested by the trustees, and thus these proceeds are not in any way to be under the control of his wife.

5. The testator, after directing "*proceeds*" to be paid by the trustees to his wife for the maintenance of herself and niece "*during her lifetime*," gives certain personal property to her, thus, "to my wife, Lavinia F. Thomson, I give *absolutely* all my household furniture, books and ornaments," showing clearly an intention to distinguish the bequest for her maintenance during life, and the bequest of such things as he desired that she should have absolutely in her own right.

Chief Justice SHARSWOOD delivered the opinion of the court, March 3d 1879.

The question presented upon this appeal depends upon the construction of the will of the late J. Edgar Thomson. It was written by himself without the benefit of legal counsel. It must have such a reasonable construction as to effectuate his whole intention—if that can be done consistently with the rules and policy of the law. When near his death, Mr. Thomson added two codicils to his will, which throw strong light upon his meaning. It is conceded that

[Thomson's Appeal.]

the word "proceeds" is a word of equivocal import.  Its construction depends very much upon the context and the subject-matter to which it is applied.  If a testator should direct his property to be sold, and the proceeds to be disposed of or distributed in a certain manner, no one could doubt that the whole corpus or principal was intended.  But should he order it to be rented or invested, then proceeds would necessarily be limited to the net income, especially if the interest given was for life only.  Here, the first provision made by the testator, was a gift and bequest of all his estate, real and personal, to trustees, "the income from which shall be devoted to the purposes" thereinafter mentioned, with power "to sell any of his property and re-invest the proceeds whenever in the judgment of the trustees the interest of the trust will be promoted."  When, therefore, immediately there follows, the direction that so much of the proceeds of the said property shall be paid to Mrs. Thomson as she may deem "necessary for the maintenance of herself and his niece, they living in such style as she may think best to promote their happiness and comfort during her lifetime," it is impossible to refer the word "proceeds" to anything but the income which he had just before devoted to the purposes of his will.  After some annuities, he then declares that the trustees shall appropriate the remainder of the net income of his estate, after the payments specified, to a charitable purpose.  Mrs. Thomson was to have whatever part of the income she might deem necessary.  It was to be entirely in her discretion to say how much. If any remained, after providing for his special annuities and legacies, it was to go to the ultimate charitable purpose.  If his niece should survive his wife, however, there was to be paid to her during life, an annuity of two thousand dollars.  This was his plan of disposition of his estate when he made his will.

As he drew near his last end, he became anxious lest he had not made a sufficient provision for his niece.  Accordingly, in his first codicil he desires her to be treated and regarded as if she were really his child, "receiving during her lifetime such income from my estate, as if she were really my child."  Without pausing to inquire what her interest may be under this and the second codicil, which directs that she shall take "out of the income" of his estate all that "she requires to render her more than comfortable in her housekeeping during her lifetime," it is enough to say that both these codicils are a strong confirmation of the construction placed upon the will by the court below.  It is very clear that the testator considered himself throughout the will and codicils, as dealing only with the income of his estate, the corpus or principal being vested in the trustees for the ultimate purpose, the charity which he had, no doubt, near his heart.

> Decree affirmed and appeal dismissed at the costs of the appellant.