Liquid Carbonic Company, Appellant, *v.* Wetherall.

Argued May 1, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*William G. Bechman* of *Thompson, Rose, Bechman & Dunn,* and with him *Jacob E. Horewitz,* for appellant.

*Henry Eastman Hackney* of *Shelby, Hackney and Ray,* and with him *Bruce Harrison* and *John Kirk Renner,* for appellees.

OPINION BY TREXLER, P. J., July 14, 1933:

This is an action of replevin originally brought to recover possession of a soda fountain, the value being set at $1,500. The case was heard by the judge of the lower court, without a jury, under the Act of April 22, 1874, P. L. 109.

On February 20, 1926, R. D. Wetherall and his brother leased to Adams a certain storeroom in Connellsville, who thereafter occupied it as a confectionery store and lunchroom. The lease was for a term of two years with a monthly rental of $260, payment in advance, with a provision that if there be a default in payment, the entire rent would be accelerated, the same as if it were payable in advance. During the occupancy of Adams, the Liquid Carbonic Company, the plaintiff, in the present action leased a soda fountain to Adams and the same was installed in the storeroom. No notice was given to the owners of the property as to the existence of a lease until after the landlord's levy to which reference is hereafter made. There were no marks on, or attached to, the

soda fountain indicating that the plaintiff was the owner thereof. About September 26, 1927, a creditor issued an execution against Adams and a constable levied upon some or all of the property contained in the storeroom, closed the store and posted sale bills. At the time the levy was made Adams was in default to the defendants for the rent of August and September of that year and they, thereupon, declared the entire rent due, the sum being $2,340, and on the day following the constable's levy, issued a landlord's warrant and made a levy upon all the goods and chattels in the storeroom including the soda fountain, and proceeded with the distress warrant, but were halted by bankruptcy proceedings on September 29, 1927. The matter was thus held in abeyance until December 7, 1927 when by order of the bankruptcy court, the trustee surrendered among other things, the soda water apparatus to the landlord. The defendants obtained $500 on account of the rent surrendering their claim against certain fixtures in the storeroom, thus reducing their claim to $1,840.

The thing again hung fire until January 31, 1928 when the attorneys for the parties by stipulation in writing agreed in order that immediate disposition might be made of the soda fountain, and goods and chattels that a bond should be given by the Liquid Carbonic Company and that it "be permitted to immediately remove, sell or dispose of said soda fountain, goods and chattels at the best price available under such terms and conditions, bailment lease or otherwise as like equipment is generally disposed of, leased or sold under bailment lease, or for cash or otherwise by the Liquid Carbonic Company." The proceeds realized from the sale were to be applied to the payment of rent in arrear. Any surplus, after paying the costs of proceedings in court, was to go to the Liquid Carbonic Company, except that in the event of the Liquid Carbonic Company winning the

present replevin suit it would not be required to account for the amount received, and the costs, in that event, were to be paid by the defendants.

The first point presented by the appellant is; the soda fountain being in the custody of the constable and bankruptcy intervening and the levy of the landlord being superceded and a claim for rent filed with the trustee and the referee subsequently releasing the fountain to the bailor, did the landlords have a lien on the soda fountain, under their levy, since they did not follow it up? This rather involved question may be briefly answered. There is no evidence in the case to show what occurred when the constable levied upon the goods and closed the store. That part of the case was allowed to remain in the clouds and there is no clear vision as to what occurred. The court suggests very properly that as to the particular goods levied upon, the testimony is silent. These matters "were not urged as a defense before the trial court." ...... "It does not appear that at the trial there was any question about the landlord's lien for rent, but the question then at issue was the amount due the landlord for rent and whether or not any notice had been given to the landlords of the soda fountain and equipment being leased property, and then the other question as to the interpretation of the word 'proceeds' in the stipulation." These quotations from the opinion of the lower court, and supported by the printed record, we think sufficiently show that the question of the constable's levy drops out of the case. As to the other matters contained in the point we treat the case the same as it was treated in the lower court. Bankruptcy stopped all the proceedings and the question whether the landlords' lien continued was not raised by the plaintiff, and disappeared when it filed a stipulation under which the soda fountain

was to be sold. Moreover, the plaintiff's property continued on the premises and was liable for the rent under the very terms of the lease. The lease provided as a security for the rent as follows: "The lessee grants, bargains and sells to the lessor all property of every kind on or to be on the premises and whenever rent is not paid, the lessor may seize said property on or off the said premises and sell the same on due legal notice for all rent due, expense, etc."

As to the second question presented it is sufficient to state that the court, sitting as a jury, was entirely correct in holding that the landlord had no notice of the ownership of the soda fountain under the bailment lease.

The third point raises the question as to what is meant by the word "proceeds" in the stipulation, above referred to. Were the "proceeds realized," the amount for which the property was sold, less the expenses incurred in the selling, or were they the gross amount, i. e., the selling price without any allowance for expenses. This is really the only point in the case and is not of easy solution. The amount realized, as stated before, was $1,200 against this the plaintiff claims in connection with the dismantling and removal of property and salesman's commission, $256.50. The court held that the word "proceeds" referred to the gross amount received for the sale of the apparatus. The word "proceeds" is a word of equivocal import. Its construction depends upon the context and the subject-matter to which it is applied. Thomson's Appeal 89 Pa. 36. Both parties were interested in the sale, the defendants because the proceeds were to go to the payment of the balance still due on the rent and the plaintiff because if a surplus remained it was to get it, and if it was successful in winning the present suit, the entire amount. It would

seem to us under these circumstances the more reasonable and just conclusion would be to take the expenses out of the sum received. If the agreement had not been made and the landlords would have sold the fountain in place presumably the fact that the purchaser had to remove it and set it up would have been reflected in the price bid, and we may in following the same thought presume that as the present price obtained was for the fountain set up in the purchaser's place, that the price was increased correspondingly for the reason that the necessity of removal and setting up and the consequent expenses were not present. However, we do not think commissions to sell should be allowed. The plaintiff agreed to sell. When it or its agent sold it was doing what it undertook to do with a view of resultant profit. We all think that the expense of selling was not in contemplation of the parties to the stipulation or, at least, is not justified by the language employed. It is not the expense of selling that we are allowing it is the expense of taking the fountain down and putting it up again, which, as we said before, is, no doubt, reflected in the price obtained and should be paid for out of the sum realized. The printed record discloses that the cost of removal and setting up was $76.50. This should be deducted from the amount of the judgment which was $1,200 which would leave $1,123.50.

The judgment of the lower court is modified and the amount fixed at $1,123.50 and thus modified the judgment is affirmed.