**Danko Trust**

*Donald M. Swope,* for trustee.

*Gary E. Hartman,* p.p., guardian and trustee ad litem.

*Edward B. Bulleit,* for beneficiary (sister).

*Richard J. Orloski,* Deputy Attorney General, for Commonwealth as parens patriae.

MacPHAIL, P. J., July 19, 1974.—In this matter we have before us a petition for instructions by a testamentary trustee. The petition recites that the trustee was appointed on November 2, 1971 (the trustee designated in decedent's will having renounced and requested the appointment of a substitute trustee), and that the trustee received $67,283.53 from the estate of testator under Item Third of his will to fund the trust provided in his will. Since November 2, 1971, approximately $4,000 in income has been accumulated by the trustee. It is estimated that the net income for the year 1974 will amount to approximately $5,000.

Pursuant to the prayer of the petition, a date was fixed for a hearing and all parties in interest, including the Attorney General of the Commonwealth of Pennsylvania, were notified thereof. A guardian ad litem was appointed for all parties who were under the age of 18 years and a trustee ad litem was appointed for unborn issue.

The jurisdiction of the administration and distribution of testamentary trusts is vested by law in the orphans' court division of the court of common pleas: Section 711, Probate, Estates and Fiduciaries Code June 30, 1972 (No. 164), 20 Pa. S. 101, et seq. The orphans' court division has all legal and equitable powers required for, or incidental to, the jurisdiction it exercises: Section 715, Probate, Estates and Fiduciaries Code. "It is permissible for a trustee, when in doubt as to the extent of his powers or as to the proper manner in which to proceed, to apply to a court for instructions concerning the administration and execution of the trust. However, a trustee is not entitled to instructions concerning all phases connected with the

administration of his trust, and has no right to come into court merely seeking an advisory opinion": 39 P. L. E. 126, §196. See also 2 Scott, Trusts §165 (Third Edition). The usual situation where the court's intervention is warranted is where the trustee's compliance with the provisions of the trust becomes impossible or impracticable. It is the trustee's contention here that it cannot comply with all the provisions of the trust because the assets are inadequate to meet the obligations imposed upon the trust. Furthermore, the petition recites, and the evidence at the hearing supports the trustee's position, that the testator fixed no priority by which the various obligations of the trust should be met. We are of the opinion that the petition is properly before us and that we have jurisdiction of the subject matter.

While petitioner seeks instructions with respect to specific questions set forth in the petition, it appears to us that in order to answer those questions, we will have to deal with two general issues. First, we must determine whether or not the trustee is authorized to invade principal for any purpose authorized in the trust and, secondly, we will have to determine how the trust can be administered to most nearly comply with testator's wishes where the assets available to the trustee are obviously inadequate to meet all of the payments authorized by testator. Under the provisions of the trust, the trustee has the following obligations: (1) to meet the educational needs of the nephews, nieces, grandnieces and grandnephews and their issue; (2) to purchase a home "costing between $10,-000 and $15,000" for the use and occupancy of each of testator's two sisters and to maintain those homes; (3) in the event either of the sisters becomes widowed, deserted, abandoned or divorced, to pay them $60 per month; (4) to provide medical, surgical, hospi-

talization and burial expenses for the sisters and a brother (who died September 22, 1972); and (5) at the death of the last grandniece or grandnephew in being at the death of testator to pay "all the remaining principal of the trust fund and any accumulated income thereon to the New Jersey Masonic Home at Burlington, New Jersey.

The will was written June 7, 1962. Testator died June 30, 1970.

At the hearing, it appeared that several nieces have notified the trustee of their desire to have educational assistance.. No other claims or requests had been asserted against the trust up to the time of the hearing.

One sister appeared at the hearing and suggested that she would waive her rights under the trust if the sum of $15,000 would be set aside in a special trust with the provision that she would receive the income therefrom until her death with no right reserved in herself to invade principal except for medical and burial expenses. She further suggested that at her death, the balance remaining in the trust would then be added to the educational part of the trust or distributed to the charity designated in the trust. The husband of the other sister (who was too ill to attend the hearing) stated on his wife's behalf that the suggestion of her sister was agreeable with his wife.

If that suggestion is followed, the present trust would be divided into three trusts, one for the benefit of each sister and one to meet educational needs of nieces, nephews, etc. When the educational obligations were met, the balance remaining in the third trust would go to the charity designated in the trust. Such an arrangement would necessarily involve the invasion of the principal of the trust.

The guardian ad litem and trustee ad litem (who is one and the same person) has no objection to the

proposal made by the sisters. The Attorney General, however, has given notice that the Commonwealth does object to any instructions which would authorize the invasion of principal. He has filed a brief in support of his position.

## INVASION OF PRINCIPAL

" 'Every will is in a sense unique and therefore precedents are of little value. . . Each will is its own best interpreter, and a construction of one is no certain guide as to the meaning of another.' [Citations omitted]": Dwight Estate, 389 Pa. 520 (1957).

Looking at the provisions of the trust now before us, we find in paragraph 5 that testator said that upon the death of the last surviving grandniece, etc., "all the *remaining principal* of the trust fund and all accumulated income thereon" (emphasis ours) should be distributed to the charity specified. Moreover, the word *income* never appears in the other four paragraphs of the trust except where, in paragraph 3, the monthly stipend for the sisters was designated "income," but there is no stipulation that such payments were to be paid *from* income. In Thomson's Appeal, 89 Pa. 36 (1879), cited in the Attorney General's brief, testator used the word "income" throughout the trust and, therefore, a fair interpretation of the language of that trust compelled the court to hold that no invasion of principal could be had. Here, for all practical purposes, the word "income" was never used. Therefore, not only did testator talk in terms of "remaining principal," but he carefully, and we believe purposely, avoided the use of the word "income." In item 1 of the trust, it again seems apparent that testator foresaw the invasion of principal because he provides for *"complete* collegiate and professional schooling" for relations that he designates only by class and the number

of which he could never have known at the time he wrote his will. Finally, when testator provided for $60 monthly payments for the benefit of his two sisters without knowing how long or how much would be involved in that portion of the trust, we feel the intention to invade principal must be implied.

We conclude by logic and reason, as well as the plain language of the trust, that testator intended that the trustee would be authorized to invade principal to carry out the provisions of the trust. Accordingly, we hold that the trustee has that power in the trust now before us.

## DIVISION OF THE TRUST

Section 7191 of the Probate, Estates and Fiduciaries Code authorizes us, with the consent of all parties in interest, to divide a trust into two or more separate trusts. This section of the new code is taken verbatim from section 991 of the Fiduciaries Act of April 18, 1949, P. L. 512, as amended, 20 PS §320.991. In the past, section 991 of the Fiduciaries Act was invoked to alleviate accounting difficulties and to provide for operational ease: Widener Estate, 53 D. & C. 2d 788 (1970), and Haas Trust Estate, 54 D. & C. 2d 450 (1972).

It seems most appropriate to invoke section 7191 in the present case. The two sisters seem to be agreed that their interest in the trust would be completely satisfied by a division of the trust into two parts for their personal use. The trustee ad litem and guardian ad litem has also agreed with this principle in his brief. The trustee will be in a much better position to manage and administer the trust if the division is made and such a division will answer some of the specific questions raised in its petition. The Attorney General has not objected to a division of the trust but, of course, that issue was not presented to him directly. In a

technical sense, a division of the trust is an invasion of principal but solely for the purpose of administration of the trust and not for the purpose of distribution. Therefore, we do not believe that the Attorney General's objection to invasion of principal would also constitute an objection to a division of the trust. Therefore, we are of the opinion that we may invoke the provisions of section 7191 and we will instruct the trustee to do so.

## INSTRUCTIONS TO THE TRUSTEE

The trustee has submitted in its petition specific questions with respect to which it seeks guidance. In view of the decree we now contemplate entering, some of those questions will become moot. However, the trustee has raised certain questions about the part of the trust which is designated for educational purposes. In order to address ourselves to those questions, we deem it necessary to set forth that provision in full:

"(1) To provide education, including complete collegiate and professional schooling at the sole discretion of the Trustee for my nieces, nephews, grandnieces and grandnephews and also for their issue, who make application to the Trustee for such educational aid and who in the sole discretion of the Trustee is deemed to be qualified."

The trustee inquires whether the discretion of the trustee in the foregoing language is limited to the qualifications of the recipients. It will be noted that testator used the words "sole discretion of the trustee" twice. In the first instance, he used the words to qualify "complete collegiate and professional schooling." On the second occasion, he used the words to give the trustee discretion in determining who should receive the

benefits. It is our opinion that testator intended that the trustee should have sole discretion in determining who should receive assistance *and* to what extent they should receive assistance. The latter determination would necessarily involve such factors as need, type of education to be pursued, the number of persons in the class of heirs to be benefited, the cost of the education and the funds available in the trust. Therefore, we advise the trustee that its discretion is not limited to the qualifications of applicants for educational assistance, but extends as well to a determination of how much assistance should be provided to each applicant.

The trustee inquires whether "educational aid" is intended to be the whole or only a part of the total cost of education for the applicant. As we previously stated, this is an instance where the exercise of discretion on the part of the trustee must be invoked. Where it is specified that such matters are within the trustee's discretion, it is inappropriate for the court to advise the trustee how its discretion should be exercised. Lippincott Trust, 21 Fid. Rep. 289 (1970). In the absence of an abuse of discretion, the trustee will be exonerated from any wrongdoing: Fearon Trust, 20 Fid. Rep. 421 (1970). We would suggest that the trustee develop a set of guidelines for the administration of this part of the trust, that those guidelines be reduced to writing, and that the guidelines be mailed to those nieces, nephews and grandnieces and grandnephews of which the trustee has knowledge. Such guidelines could take into consideration the number of persons eligible to receive the benefits, the need to preserve the assets of the trust for future demands, the qualifications of the applicant, the applicant's need for educational financial assistance and the relationship of the applicant to testator.

## DECREE NISI

And now, July 19, 1974, after due consideration of the averments set forth in the petition, the testimony of the witnesses, the briefs of counsel and the language of the trust instrument, it is ordered and decreed that the Community National Bank of Southern Pennsylvania, testamentary trustee under the last will and testament of John Danko, late of Germany Township, Adams County, Pa., be and it is hereby advised as follows:

A. With respect to the interest of Anna Danko Harr and the interest of Helen Danko Learn, the trustee, upon receipt of appropriate written consents and waivers by each of such persons, is authorized to set apart from the corpus of the trust now in being the sum of $30,000 to be divided equally into two trusts to be known as The Anna Danko Harr Trust and The Helen Danko Learn Trust. The trustee shall pay the annual net income in each trust in quarterly installments to the beneficiary of each trust for the duration of the natural life of such beneficiary. The trustee shall pay from the principal of each trust such sums as may be necessary for any medical, surgical or hospitalization expenses incurred by the beneficiary as a result of her own personal injuries or illness, provided that such expenses cannot be paid from insurance maintained by the beneficiary or by government payments due for the beneficiary's medical care. At the death of the beneficiary of each trust, the trustee shall pay from the net income of that trust, and to the extent necessary from the principal thereof, the reasonable burial expenses of such beneficiary, provided that such expenses are not otherwise paid or provided for by insurance or government payments due the beneficiary for this purpose. After the payment of the foregoing ex-

penses, the balance of principal and income remaining in the trust shall be transferred by the trustee to the trust mentioned in paragraph B, below.

B. After setting apart the sums specified in paragraph A above, the trustee shall administer the balance of income and principal remaining in the trust now in being as a separate trust to be known as The John Danko Educational Trust. There shall be added to the principal of that trust the balance of principal and income remaining in each of the trusts mentioned in paragraph A above, upon the death of the beneficiary of such trusts. The trustee shall pay from the income, and when necessary from the principal of The John Danko Educational Trust, such sums as the trustee in the exercise of its sole discretion shall deem necessary for financial aid for educational purposes beyond the secondary level to such of the nieces, nephews, grandnieces and grandnephews and issue thereof as the trustee in the exercise of its sole discretion shall deem worthy of such assistance. At the death of the last surviving grandniece or grandnephew in being at the date of decedent's death, this trust will terminate and the trustee shall pay over to New Jersey Masonic Home at Burlington, N. J., all the remaining principal and accumulated income in The John Danko Educational Trust.

It is further decreed that this decree shall be entered as a decree nisi and that notice hereof shall be given by the clerk of the courts to all parties in interest, or their counsel, who appeared at the hearing. If no exceptions or objections are filed within 30 days, the clerk shall enter this decree nisi as a final decree and assess the costs of this proceeding against the petitioner to be paid from the proceeds in the trust.