Argued March 17, modified April 19, 1927.

# ROGER McAFEE et al., Trustees, v. MARGUERITE THOMAS, Administratrix.

### (255 Pac. 333.)

**Wills—Will, Devising Property Subject to Life Estate of Testator's Epileptic Son, Held not to Forbid Trustee to Use Principal for Son's Support, if Income Became Insufficient (Or. L., § 9763).**

1. Will, transferring testator's property to trustee with "full power to manage and control said property in any manner he may deem proper" for support of testator's epileptic son, and devising property subject to son's life estate, to take effect on his death, to other trustees for charitable purpose, *held* not to forbid use of principal by trustee for son, if income became insufficient for son's support; intent to care for dependent son, as required of parents by Section 9763, Or. L., being indicated.

**Wills—In Ascertaining Testator's Intent, Courts will Consider Circumstances, Including Condition of His Family and Estate, His Affection for Legatees, etc., When Will was Executed.**

2. In construing will to ascertain testator's intent, courts will put themselves in testator's position as far as possible by considering circumstances surrounding him at time of execution of will, including condition of his family and estate, his affection for legatees, his social relations, etc.

**Wills—Where Income Becomes Insufficient for Purposes of Testamentary Trust Because of Changed Conditions, Court will Change Terms of Will to Effect Testator's Intent as Nearly as Possible.**

3. Where conditions of estate change from what testator contemplated, and income is no longer sufficient for purposes desig-

---

2. See 28 R. C. L. 270.

nated in trust, court will so change terms of will as to effect testator's intention as nearly as possible.

**Wills—Court, in Extreme Urgency, will Allow Infant's Maintenance from Capital Fund, Though Inconsistent With Testator's Disposition.**

4. In cases of extreme urgency, court will allow maintenance for infant out of capital fund, even when inconsistent with disposition made by testator.

**Trusts—Generally, Trustees are Entitled to Reasonable Compensation, Usually Payable from Income, but Often from Principal Within Court's Discretion.**

5. Generally, trustees are entitled to reasonable compensation, usually payable from income, for their time, trouble and skill in managing fund, but in many cases it is payable from principal within court's discretion.

**Trusts—Realty, Transferred to Remaindermen by Trustee for Deceased Life Tenant, Should not be Encumbered With Trustee's Compensation, not Fixed Before Termination of Trust.**

6. Title to real estate, turned over to trustees of residuary estate by trustee for life tenant after latter's death, should not be encumbered with such trustee's compensation, but he should apply to court for construction of will and obtain permission to expend principal in caring for ward before disbursing funds.

**Trusts—Life Tenant's ' Trustee, Turning Over Income Producing Realty to Residuary Trustees, Held Entitled Only to Cash on Hand as Commission for Services.**

7. Trustee, turning over to trustees of residuary estate realty transferred to him by will to secure income therefrom for testator's son during latter's life, without having applied for construction of will and obtained permission to expend principal in caring for ward before disbursing funds, *held* entitled only to cash balance on hand as commission for service.

Trusts, 39 Cyc., p. 479, n. 14, p. 486, n. 55, 56, p. 493, n. 10.
Wills, 40 Cyc., p. 1392, n. 11, p. 1393, n. 13, 14, p. 1426, n. 93.

From Multnomah: WALTER H. EVANS, Judge.

Department 2.

This is a suit by the three plaintiffs, as trustees, against George H. Thomas for an accounting as a trustee. The trial court rendered a decree in favor of plaintiffs in the sum of $1,879.30, with interest and costs. Defendant appealed. Since the appeal

5. See 26 R. C. L. 1392.

the administratrix of the defendant, who is now deceased, has been substituted as defendant. George H. Thomas was made a trustee under a clause in the last will and testament of F. A. Litchenthaler, who died March 12, 1906, which reads as follows:

"I give, devise and bequeath to my son George C. Litchenthaler, for his natural life only, all the net income derived from my property, real, personal and mixed, hereby to that end transferring the same to George H. Thomas as trustee for said George C. Lichtenthaler with full power to manage, control and secure an income from said property in any manner he may deem proper paying the same as it accrues, to or for the support and maintenance of my son as he may deem proper paying the same as it accrues, to or for the support and maintenance of my son as he may deem advisable * * " Said will and codicil thereto provides that "Subject to said life estate of my son I give, devise and bequeath my said property, so that the same shall take effect upon his death to" Roger McAfee, Newton McCoy and M. F. Miller, "as trustees to manage, rent, control and regulate as they may deem proper, investing the income and proceeds to the establishment, support and continuance of a non-sectarian Christian Mission to be known," etc.

George C. Litchenthaler, the son, was an epileptic and by reason of his infirmity was utterly unable to support himself and required constant care and attention. His father, prior to his death, had devoted practically his entire attention to the boy. The boy's condition became steadily worse until his death June 26, 1919. The trustees, Roger McAfee, Newton McCoy and M. F. Miller, were executors of the last will of F. M. Litchenthaler, deceased.

Upon the completion of the administration of the estate under the will of F. M. Litchenthaler, the executors turned over to George H. Thomas, as trustee,

121 Or.—23

for the use of George C. Litchenthaler, about March 11, 1907, $2,478.13, of which $2,077.18 was principal and $400.55 was income of the estate, and the executors also turned over to said trustee the management of two old dwelling-houses and a store building, which were then producing a small income of about $41 per month. F. M. Litchenthaler, at the time of his death, had an interest in some mining claims in eastern Oregon from which it was evidently expected there would be considerable income. The defendant trustee received from that source $76.00, as a portion of money paid for an option to purchase.

Thomas was requested by the father of George C. Litchenthaler to take the best of care of his son during his lifetime. During the probate of the estate F. M. Litchenthaler, deceased, Thomas took the son to his own home and kept him as one of the family, for about one year. Afterward he became so violent, by reason of his epileptic attacks, that Thomas was obliged for many years to keep him in an asylum where he could be cared for. The money was kept loaned out by Thomas and the buildings were rented, as far as possible. A sufficient amount of the funds of the estate, to take care of the ward, were applied for that purpose but the income from the buildings became steadily less and the cost of caring for the ward increased. At the termination of the duties of Thomas as trustee, the necessary support of the ward and his necessary funeral expenses had consumed all the money on hand, except $384.77.

Defendant alleges that said ward was the only child of his father, and natural law, equity and humanity demanded that he be given, during his lifetime, what his necessities required, even as would have happened had his father been living.

The defendant alleged that he served as trustee twelve years and three months in the collection and disbursement of the funds, the renting of the house, the payment of taxes, maintaining insurance and repairs, and the numerous other duties demanded in such cases; and that the reasonable value of his services is $6 per month, or $882; that the reasonable value of the board, lodging, care and attention for the ward during the year of probate was $600, of this the executors paid $150; after the death of the ward, for the period of about one year, Thomas, as agent for plaintiff, cared for the real property and his services for that period were worth $60, which was allowed by the trial court.

Defendant alleges that his services in caring for the wants of the ward for twelve years and three months was of the value of $12 per month, or $2,294; that the total value of his services is $3,836, no part of which has been paid, except $150, leaving a balance due of $3,686; that the appellant has on hand, after having paid for the care and expense of said estate and ward, the sum of $384.77, which he is entitled to apply in part payment for the balance of his services, leaving a balance due him of $3,301.23. That on February 23, 1921, he fully accounted to plaintiffs and transferred to them all the real property held by him under the trust.                                MODIFIED.

For appellant there was a brief and oral arguments by *Mr. Lester W. Humphreys* and *Mr. Frank Schlegel.*

For respondents there was a brief over the name of *Mr. Newton McCoy,* with an oral argument by *Mr. William M. Gregory.*

BEAN, J.—The trial court held that only the income of the property of the estate of F. M. Litchenthaler, deceased, was subject to the payment of the expenses of the care of the son George C. Litchenthaler, and rendered a decree accordingly, after allowing Thomas, the trustee, $60 for services to plaintiff in making collections and disbursements since the death of George C. Litchenthaler, and another creditor of $15, and the funeral expense of George C. Litchenthaler, $150.

The questions in this case are first in regard to the authority of the trustee to expend the principal of the funds of the estate of F. M. Litchenthaler for the support of the son George C. Litchenthaler, and in regard to the compensation of George H. Thomas as trustee.

1. An account was rendered by Thomas to the present trustees, the plaintiffs, of all the items of receipts and expenditures as trustee for George C. Litchenthaler. The correctness of the items is not questioned, except as indicated. Parents are bound to maintain their children, when poor and unable to work to maintain themselves: Section 9763, Or. L. It is clear from the provisions of the will that the testator intended to provide for the care and maintenance of his invalid son during his lifetime. The difficulty arises on account of the estimate of the income of his property. If the conditions had remained substantially as the testator contemplated them, there would have been no question as to a proper and literal execution of his will.

The surrounding conditions were such that the houses were not desirable except for paying small rents. The mines did not pan out richly and it became

impossible for the trustee who was given "full power to manage, control and secure an income from said property in any manner he may deem proper" for the support of the son to pay for the same from the income.

According to the provisions of the will, if from the mines, or any source, an income of the estate had been obtained largely in excess of the requirements for the care of the son, the surplus of such income would have gone to the plaintiffs as trustees. This indicates there was no real difference in the mind of the testator between a dollar of the principal and a dollar of the income of the funds of the estate. All the court can do is to make a substantial approximation to the scheme which the testator announced in his will, in order to carry out the real intent of the testator. See *Wikle* v. *Woolley*, 81 Ga. 106 (7 S. E. 210).

We are not blazing a new trail in the matter, although the like cases are not numerous. In the case of *McGill* v. *Young*, 75 N. H. 133, 134 (71 Atl. 637), we read as follows:

"Although the testator says in the clause of his will in which the provision for the support of his son appears, that the trustee shall support him out of the net income of the estate, it is highly improbable it was intended to limit the trustee to that fund and to forbid him to use the principal if at any time the income should be insufficient for the purpose." * *

It will be noticed that the testator did not devise and bequeath all of his property to the plaintiff trustees but devised and bequeathed his property "subject to said life estate of my son." Taking the whole instrument together, although the testator directs the support of his son from the income, it is not probable that he intended to limit the trustee to

that fund and forbid him to use the principal, if at any time the income was insufficient for the purpose. On the other hand, an intent to care for the son, as he was unable to care for himself, is indicated by the will. There was, however, a limitation contained in the codicil to the will which affects the property devised and bequeathed to the plaintiff trustees, which restriction was to take effect upon the death of the son. The second clause of the codicil provides "the said trustees shall not sell or mortgage any of my real or personal property in the City of Portland, Oregon." There is no such restriction found in the will as to the authority of George H. Thomas trustee for George C. Litchenthaler.

2. In endeavoring to construe a will so as to ascertain the intention of the testator, the courts will, as far as possible, put themselves in the position of the testator by taking into consideration the circumstances surrounding him at the time of the execution of the will. The court should consider the condition of his family and estate, his affection for the legatees, his social relations, etc.: 30 Am. & Eng. Ency. of Law, p. 666.

3. Where the conditions of the estate changed from what the testator had in contemplation, and the income was no longer sufficient to care for the purposes designated in the trust, the court will so change the terms of the will as to effect as nearly as possible the intention of the testator: 30 Am. & Eng. Ency. of Law (2 ed.), p. 667.

4. In cases of extreme urgency the court will allow maintenance for the infant out of the capital fund, even when inconsistent with the disposition made by the testator: Woerner, Am. Law of Adm. (3 ed.), pp. 1581, 1582.

5. As to the compensation of trustee, as a general principle trustees are entitled to a reasonable compensation for their time, trouble and skill in managing the fund usually payable out of the income, but in many cases it is payable out of the principal, the matter being more or less in the discretion of the court: 2 Perry on Trusts, § 918; 26 R. C. L. 1392; 28 Am. & Eng. Ency. of Law (2 ed.), p. 1014.

6. In the case at bar the testimony indicates that it was reasonably worth five or six dollars per month for caring for the real property, collecting rents, etc., but the real estate has been turned over by Thomas to the plaintiffs, who are the present trustees and the title thereto should not be encumbered with the compensation of the trustee. The defendant should have made an application to the court for a construction of the will and obtained permission to expend the principal in caring for the ward before disbursing the funds.

7. George H. Thomas, the trustee, will therefore be allowed a small commission for his services, amounting to the balance of cash on hand, $384.77, and the account of Thomas as trustee will be squared and approved. The decree of the court will be changed accordingly.                          Modified.

BURNETT, C. J., and BROWN and BELT, JJ., concur.