# IN RE TRUST CREATED UNDER THE LAST WILL AND FIRST CODICIL OF CHARLES A. COSGRAVE.
## NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS v. S. D. BALCH AND ANOTHER.[1]

February 13, 1948.

No. 34,416.

---

[1]Reported in 31 N. W. (2d) 20.

444

*Koon, Whelan, Hempstead & Davis* and *John P. Somers,* for appellants.

*H. Van Valkenburg & Blaisdell,* for respondent.

PETERSON, JUSTICE.

The individual trustees of the trust created under the will and codicil thereto of Charles A. Cosgrave appeal from an order procured upon the petition of the corporate trustee authorizing and directing the trustees to pay out of the corpus of the trust estate the excess of the cost of the widow's care and support over the income therefrom.

The questions for decision are: (1) Whether under a testamentary trust testator's widow is entitled to support out of the corpus of a trust, if income therefrom is insufficient, where testator by his will, after directing payment of his debts, the expenses of his last illness, funeral, administration, and inheritance and estate taxes, and giving part of his estate consisting of the homestead and certain personal property outright to his wife for life, with remainder to his daughters by a prior marriage, gave the residue of his estate to trustees, if his wife survived him, in trust "to manage" his "estate" and "to pay the income of such trust" monthly in equal shares to his widow and his two daughters; but with the proviso that, if "one-third of the proceeds of said trust" should be insufficient to support the widow in the style and manner in which testator supported her, the trustees in their discretion were authorized to pay for such purpose from the "proceeds" of the "trust" such additional sums as they deemed necessary and proper, in which event "the share of the proceeds of said trust hereinbefore given" to the daughters, which was referred to in the next clause as "income" given to them, should be "decreased accordingly"; and the codicil contained identical provisions relative to the terms of the trust, except that in the proviso authorizing the trustees to pay more than one-third of the proceeds, etc., for the widow's support it used the word "estate" instead of the word "trust" wherever that word occurred in the will itself; and (2) whether, if the preceding question is answered in the negative,

the court may confer power upon the trustees to encroach upon the corpus of the trust for the purpose of paying for the widow's support to the extent that it exceeds the amount of the income from the trust.

The will, after a general direction that testator's debts and the expenses of last illness, funeral, and administration be paid, and a specific direction that inheritance and estate taxes be paid out of the "principal" of the estate, disposed of testator's property in part outright and in part in trust contingent upon his wife's surviving him.

Outright disposition of the homestead and certain personal property was made to the widow for life and at her death to his two daughters by a prior marriage and, if they died before his widow, to their children by right of representation. If the widow did not continue to occupy the homestead, the trustees were empowered to lease it and to pay the income in equal shares to the widow and the daughters, and if the widow and the daughters gave their written consent, to sell and convey the homestead and to distribute the "net proceeds thereof" in equal shares to the widow and the two daughters.

The residue was given in trust during the widow's life, contingent upon her surviving the testator. The trustees were directed "to manage my said *estate* and to pay the *income* of such trust" (italics supplied) monthly in equal shares to his widow and his two daughters; but with the proviso that, if one-third of the "proceeds of said trust" should be insufficient to support the widow in the style and manner in which testator supported her during his lifetime, the trustees were directed to pay to her "from the proceeds of said trust" such additional sums as might be needed for the purpose, in which event "the share of the proceeds of said trust hereinbefore given" to the daughters "shall be decreased accordingly." The codicil contains identical provisions, except that the word "estate" is used therein wherever the word "trust" occurs in the proviso in the will authorizing the trustees to pay more than one-third of the proceeds, etc., for the widow's support.

Upon testator's wife's death, whether she predeceased or survived him, he gave the principal and accrued interest in said trust or in the residue of his estate, as the case might be, to his two daughters. If a daughter or the daughters died before his wife, he gave "the share or portion of the *income* devised to such daughter or daughters (italics supplied) to her or their children by right of representation, and if a daughter or the daughters died prior to receiving the principal and accrued interest, he made like disposition of their shares thereof to their children.

The will further provided: (a) That the trustees might retain and change investments coming into their hands as such, sell real and personal property, and "buy, sell, invest and reinvest the *proceeds* of said estate" (italics supplied) in securities which are legal investments for trust companies, which powers were enlarged by the codicil so as to authorize the trustees to invest and reinvest "available cash funds of the *trust estate*" (italics supplied) in preferred and common stocks, regardless of whether such were authorized investments for trust companies; (b) that the provisions for the benefit of the widow should be in lieu of all dower and statutory rights which she might have in the estate and not in addition thereto, except the widow's allowance during the pendency of probate proceedings; and (c) that if the widow should die before the testator, the will should be automatically revoked as to her without affecting the other provisions thereof.

The will names the corporate trustee and S. D. Balch, the husband of one of the daughters, as cotrustees. The codicil names Robert G. Reiniger, the husband of the other daughter, as an additional co-trustee.

The wife and daughters survived the testator, who died prior to May 1, 1941, when the trustees were appointed. The residue of the estate held in trust by them exceeds in value $122,000. The annual net income from the trust was about $3,900 for 1941-1942 and has decreased to about $2,900 for 1945-1946. The widow, who is now over 85 years of age, has continued to occupy the homestead and to use the household furniture and furnishings. One-third of the in-

come of the trust has been insufficient for the widow's support. From May 1941 to April 1944, the trustees paid her $200 per month for support and thereafter the entire income of the trust. In 1944 she was injured. Thereafter, it required about $6,500 per year to maintain the widow and her niece in her home and to pay doctor's and nurses' bills. The support of the niece is justified upon the ground that she contributes to the widow's care. The net income of the trust apparently is adequate to pay for the care and support of the widow in a hospital, but she objects to leaving her own home, and her doctor advises against her doing so. The court authorized encroachment upon the corpus to an extent necessary to provide in the aggregate $6,500 per year for the widow's care and support, $800 for doctor's bills, and approximately $1,000 for attorneys' fees, an aggregate of about $5,400, with leave to apply to the court in the future for still further encroachments.

The individual trustees contend (1) that under the will the widow was not entitled to support out of the corpus of the trust estate, and (2) that the power of the court to authorize a trustee to deviate from the terms of a trust does not include that of authorizing a trustee to encroach upon corpus belonging to a remainderman for the benefit of a life beneficiary. The corporate trustee contends (1) that testator intended that if the income should be insufficient for his widow's support the corpus should be used for such purpose; and (2) that if the will is not so construed "the Court has the power to grant the authority itself" and should do so.

■ The intention of the testator as expressed in his will controls in the administration of a testamentary trust. In re Trust Under Will of Jones, 221 Minn. 524, 22 N. W. (2d) 633.

■ Power to encroach upon corpus for the support of the beneficiary of a testamentary trust is nonexistent unless it is given by the will, either expressly or by implication. Annotation, 108 A. L. R. 550.

■ In construing a will, the cardinal rule is that the testator's intention is to be gathered from the language of the will itself. In re Trust Created by Will of Crosby, 224 Minn. 173, 28 N. W. (2d)

175; In re Trusteeship Under Will of Berrisford, 223 Minn. 446, 27 N. W. (2d) 412. Conversely, intention which the testator may have had, but did not express in his will, cannot be considered. As said in In re Trust Created by Will of Silverson, 214 Minn. 313, 316, 8 N. W. (2d) 21, 23:

"It is fundamental that the intention of a testator must be sought in the language of his will; and, if that is clear, what he meant to say and did not or what he might have said if he had thought of it is foreign to the inquiry."

■ The court does not possess the power to, and never should, rewrite or remake a will to provide by conjecture what the testator might have said if he had foreseen events occurring subsequent to his death or to escape what seems to be an undesirable result. In re Estate of Jensen, 185 Minn. 284, 240 N. W. 656; In re Estate of Convey, 177 Minn. 266, 225 N. W. 17; Empenger v. Fairley, 119 Minn. 186, 137 N. W. 1110; Springfield Safe D. & T. Co. v. Dwelly, 219 Mass. 65, 106 N. E. 554; First Trust Co. v. Reynolds (D. C.) 46 F. Supp. 497. In Matter of Winburn, 265 N. Y. 366, 374, 193 N. E. 177, 180, the court said:

"* * * His [testator's] preference could be based upon logic or he could act without regard for it. *The will is his and cannot be redrafted by this court.* Whatever the probabilities may be, we cannot indulge in speculation relating to his intent but must be controlled by the language of the entire will considered in relation to each part." (Italics supplied.)

■ Testator manifested a testamentary intention of making separate dispositions of life and remainder interests, with some exceptions, to his wife and daughters. To his wife, he gave a life estate outright in the homestead and personal property, one-third of the income of the trust during her life absolutely, and so much of the other two-thirds, which he gave to his daughters, as the trustees in their discretion might deem necessary for her support in the style and manner in which he supported her. He did not give her the property mentioned for life with the right to use or consume it for

her support as is frequently done (Beliveau v. Beliveau, 217 Minn. 235, 14 N. W. [2d] 360; Annotation, 108 A. L. R. 543; 33 Am. Jur., Life Estates, Remainders, etc., §§ 235-243), nor did he direct the trustees to provide for her support out of his estate. On the contrary, he made *definite* and *specific* provision as to what she should have, viz., a life estate in the homestead and personal property, one-third of the income of the trust absolutely, and, if necessary for her support, so much of the other two-thirds thereof as the trustees deemed necessary. To his daughters, he gave two-thirds of the income of the trust during his widow's life, subject to encroachment thereon for her support in the discretion of the trustees, and, at the widow's death, the homestead, personal property, and the corpus of the trust in remainder. By the terms of the will, he gave to his daughters in remainder not what should be left of the corpus after providing for his wife's support, but *the very property constituting the corpus,* which he devised and bequeathed to the trustees in trust, subject only to such changes and substitutions as might be effected by the trustees' exercise of their power to change investments. Thus, it appears that testator intended that the corpus should pass to the daughters intact at his wife's death. The fact that testator authorized encroachment for his wife's support upon the two-thirds of the income of the trust given to the daughters shows not only that he had in mind both the matter of providing for his wife's support and that of encroachment for that purpose upon the shares given to others under the will, but also that he intended to and did manifest his intention with respect to both matters by specifying a single instance in which there might be encroachment for his widow's support; that is, to use so much of the two-thirds of the income of the trust given the daughters as the trustees deemed necessary for his widow's support. The provisions requiring the trustees to keep the corpus invested indicate an intention to keep it intact. The provision to the effect that the provisions made for the widow under the will should be in lieu of all others betokens an intention that she should take only that which was given her. Because no right of encroachment for the widow's support was authorized upon the corpus

of the trust, homestead, and personal property, all of which were given in remainder to the daughters, and because no testamentary intention authorizing such encroachment was otherwise manifested, it is plain that testator intended that there should be none. The will shows that testator nicely calculated and measured the shares of his estate which he intended to give to his wife and to his daughters respectively. It is clear beyond doubt that he intended that his daughters should have the corpus of the trust intact at his widow's death; that they should have it without any encroachment thereon. While the provision for the widow was not sufficient to enable her to live in the manner proposed by the corporate trustee, testator undoubtedly thought that he had made adequate and generous provision for her. Like many others, as the cases cited herein illustrate, he made provision that was inadequate for the claimed needs of his beneficiary.

There are other but subsidiary intentions. Just as testator made an exception to his primary intention that there should be no encroachment upon corpus for the benefit of any beneficiary at the expense of another by providing that the trustees might encroach for the widow's support upon the two-thirds of the *income* of the trust given to his daughters, he also made an exception to his intention that his daughters should have his entire estate in remainder by providing that in case of sale of the homestead the widow should have one-third of the proceeds thereof. Those exceptions show an intention that the widow should receive only what was specifically given to her, and not, as the corporate trustee contends, that she should have the right to consume his entire estate for her support if that should be necessary. Because testator had otherwise indicated an intention that his wife should not have that which he gave her by the exceptions mentioned and because the exceptions were necessary in order to give her that which they included, the exceptions were made. The other provisions of the will relate to the methods and manner of effectuating all the intentions of testator.

The provision for the trust showed an intention to separate income from corpus. 3 Page, Wills (Lifetime ed.) § 1156. The creation

of a trust to pay the income to the widow during her life and at her death to pay over to the daughters the corpus and any accrued income was the appropriate manner of creating a trust for life with remainder over. First & Am. Nat. Bank v. Higgins, 208 Minn. 295, 310, 293 N. W. 585, 593. The provisions that the trustee should pay one-third of the income of the trust to the widow absolutely and so much more thereof as might be necessary for her support plainly limit the widow's support to income without right to encroach upon the corpus. Einbecker v. Einbecker, 162 Ill. 267, 44 N. E. 426; New York L. Ins. Co. v. Conrad, 269 Ky. 359, 107 S. W. (2d) 248; Lynn Safe D. & T. Co. v. Martin, 308 Mass. 443, 32 N. E. (2d) 247; Longley v. Hall, 28 Mass. (Pick.) 120; Mills v. Michigan Trust Co. 124 Mich. 244, 82 N. W. 1046; Delaney v. Van Aulen, 84 N. Y. 16; Matter of Hilliard, 164 Misc. 677, 299 N. Y. S. 788; Matter of Johnson, 50 Misc. 99, 100 N. Y. S. 373; Petition of Fero, 9 How. Pr. (N. Y.) 85; Buckle v. Marshall, 176 Va. 139, 10 S. E. (2d) 506; First Nat. Bank v. Barnes, 237 Wis. 627, 298 N. W. 215; Estate of Boyle, 232 Wis. 631, 288 N. W. 257. In the Delaney case, the court said of a similar provision for testatrix's husband (84 N. Y. 23):

"* * * It is given as the current avails of a fund," and, "As to her husband then, there is nothing to show an intention in the testratrix that the *corpus* of the estate should be taken for his use; rather the contrary is shown, that he is to have only annual rents, profits and income, though they vary in amount, from year to year."

While in such a case the absence of a gift over does not betoken an intention that corpus may be encroached upon for the support of the life beneficiary, as was held in the Delaney case, the presence of a provision for a gift over indicates an intention that the corpus is to be kept intact for the remaindermen without diminution by encroachment for the benefit of prior takers. Lynn Safe D. & T. Co. v. Martin, *supra;* First Nat. Bank v. Levy, 123 N. J. Eq. 21, 195 A. 820; Annotation, 136 A. L. R. 74-76. The devise over of the homestead and the bequest over of the personal property are important

as showing testator's general intent not to give the widow any part of the corpus of his estate, but only the benefits therefrom during her life.

The power of the trustees under the will to sell and reinvest the proceeds of any sale also indicates an intention to keep the corpus intact for the purpose of earning income. This it cannot do if it is to be consumed by encroachments upon it. Einbecker v. Einbecker, 162 Ill. 275, 44 N. E. 429, *supra;* Browning v. Ashbrook's Executor, 175 Ky. 755, 195 S. W. 105.

Our decision in Wheaton v. Woell, 182 Minn. 212, 234 N. W. 14, does not support the view that the widow is entitled to have the corpus applied for her support. That case is regarded as one construing a will containing language indicating an intention that if the income is insufficient the corpus may be used. Annotation, 136 A. L. R. 76. And so it is. There, the trust estate amounted to $13,000. The will provided that the widow should receive $30 per month, and in case of sickness the trustees were directed to pay in addition (182 Minn. 214, 234 N. W. 15) "from the interest and profits arising from said Trust Fund" expenses of sickness, medical care, and nursing; that $6,000 should be paid as specific bequests; and that "in case anything remains after making such payments" the remainder should be equally divided among his five daughters. We held that the corpus, so far as it did not diminish the $6,000 for the specific bequests, could be resorted to for the purpose of paying the expenses of the widow's sickness and that the corpus could be encroached upon only insofar as it was anything that remained after payment of the specific bequests. Where the subject of a gift over is referred to as "anything remaining," "anything left," "the remainder, if any," and the like, such language permits an inference that what is given over is subject to use by the first taker and that only what is left after such use is given over. In the case of a trust during the cestui's life, such language indicates an intention that the trustee may encroach upon the corpus for the cestui's benefit. Annotation, 108 A. L. R. 544-548. The Wheaton case is authority for the rule that there can be encroachment under such language only

insofar as there is no specific bequest, but not otherwise. Here, there is no such language and no manifestation of testamentary intent that the trustees shall have the right to encroach upon the corpus. On the contrary, the gift over of the corpus as such betokens an intention that there was not to be any encroachment thereon.

■ The word "proceeds" in the proviso authorizing the trustees to use part or all of the proceeds of the trust and of the estate for the widow's support, following the directions to pay the "income" of the trust to the widow and the daughters, does not mean corpus. The provisions authorizing the use of "proceeds" for the widow's support authorize the use of income, but not of corpus. In support of the view that the word "proceeds" as here used means "corpus," the corporate trustee argues that, while the trustees are directed to distribute "income" to the widow and to the daughters, the proviso in both instances authorizes the use of "proceeds" for the widow's support; that the change from the word "income" to that of "proceeds" indicates a change of meaning, which under the circumstances can only mean that the word "proceeds" is used as referring to "corpus" rather than to "income"; and that an intention that the corpus should be used for the widow's benefit is confirmed by the provision in the will that in case of a sale of the homestead she was to receive one-third of the "proceeds thereof."

In determining the meaning of the word "proceeds" here, our aim should be to discover the meaning with which the testator used the word in expressing his testamentary intention. A word means what it manifests. This depends upon all factors that may shed light on the question, such as the etymology of the word, the subject matter to which it is applied, the context in which it is set, and the circumstances and time of its use. Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. (2d) 878. A word may be used with different meanings in the same will. In re Estate of Douglas, 149 Minn. 276, 183 N. W. 355. As said in Edgerly v. Barker, 66 N. H. 434, 450, 31 A. 900, 903, 28 L. R. A. 328, "The context may show clearly that the testator meant to put two different senses upon the same word." It has been said that the word "proceeds" is one of "great generality."

Phelps v. Harris, 101 U. S. 370, 380, 25 L. ed. 855, 858. When used as a noun, the word "proceeds" etymologically means something that comes forth or issues from a source or origin, as, for example, something that arises or accrues from some possession or transaction. Webster's New International Dictionary (2 ed.) 1947. The word "proceeds" may mean either corpus or income depending on the intended meaning. Corley v. Bishop, 101 Miss. 490, 58 So. 360; Von Der Lindte's Estate, 249 Pa. 220, 94 A. 828; Allen v. Barnes, 5 Utah 100, 12 P. 912; 34 Wd. & Phr. (Perm. ed.) "Proceeds," p. 124, et seq. In statutes[2] and decisions,[3] the word "proceeds" is used in such phrases as "proceeds of the sale" and the like to denote money or other consideration received by the seller upon a sale of property.

Here, we think that testator used the word "proceeds" in some parts of the will as meaning "corpus" and in others as "income." For example, where he refers to the proceeds of a sale of the homestead and to the proceeds of a sale of assets of the trust, directing the reinvestment of the proceeds of said estate, he obviously means corpus, because the proceeds in such cases are what was received upon a sale. Barnum v. White, 128 Minn. 58, 150 N. W. 227, 151 N. W. 147; Landis v. Olds, 9 Minn. 79 (90). But in the proviso, where he authorizes the application of "proceeds" to the widow's

(This is not a catalogue, but a statement of some illustrations.)

[2]*Trustee's sale.* M. S. A. 501.28; Melby v. Nelson, 169 Minn. 273, 277, 211 N. W. 465, 466, where proceeds of sale are referred to as "proceeds of the land" and "proceeds of the real estate."

*Execution sale.* § 550.08; Carlson v. Headline, 100 Minn. 327, 111 N. W. 259; 3 Dunnell, Dig. §§ 3538a, 3539.

*Mortgage foreclosure sale.* § 580.09; Endreson v. Larson, 101 Minn. 417, 112 N. W. 628, 118 A. S. R. 631; Hill v. Rasicot, 34 Minn. 270, 25 N. W. 604.

*Partition sale.* § 558.16; Johnson v. Avery, 56 Minn. 12, 57 N. W. 217.

*Probate sales.* §§ 525.63, 525.66; In re Estate of Hencke, 212 Minn. 407, 4 N. W. (2d) 353.

[3]*Sale of real estate.* Beliveau v. Beliveau, 217 Minn. 235, 14 N. W. (2d) 360; Barnum v. White, 128 Minn. 58, 150 N. W. 227; Phelps v. Harris, 101 U. S. 370, 25 L. ed. 855.

*Sale of personal property.* Landis v. Olds, 9 Minn. 79 (90).

support, he uses the word as meaning "income," as we shall presently show.

Where the word "proceeds" is used to denote money or something else issuing or accruing from a fund or property which is to be maintained intact, it means "income." In cases where proceeds of a fund or property are to be paid to a life beneficiary with gift over of the fund or property as the remainder, an intention is manifested that the word "proceeds" is used as synonymous with "income" and that the fund or property is not "proceeds," but rather is the corpus from which the "proceeds" arise. In Browning v. Ashbrook's Executor, 175 Ky. 760, 761, 195 S. W. 108, *supra,* where the will gave the testator's widow "the proceeds of my estate" so long as she remained his widow, together with one-third of his estate, to do with and handle as she pleased, and two-thirds thereof to his heirs, it was held that "The term 'proceeds' as used in the will meant income," and that there were no words from which it could be inferred that she should have the right "to encroach upon the *corpus* of the estate."

In Thomson's Appeal, 89 Pa. 36, which is indistinguishable from the case at bar, the trustees of a testamentary trust were directed to apply the income of the trust to the purposes thereof, subject to payment of so much "of the proceeds of the said property" to testator's wife as *she* might deem necessary for the support of herself and his niece. There, as here, there was subsequent reference to the amounts to be used for support as "income," with the difference only that there a codicil referred to the money applicable for the support of the niece as "income," and here the shares of the daughters which were subject to be applied for the widow's support were referred to in the next clause of the will itself as "income." After pointing out that the word "proceeds" is one of equivocal import, Mr. Chief Justice Sharswood said (89 Pa. 46):

"* * * Its construction depends very much upon the context and the subject-matter to which it is applied. If a testator should direct his property to be sold, and the proceeds to be disposed of or distributed in a certain manner, no one could doubt that the whole

corpus or principal was intended. But should he order it to be rented or invested, then proceeds would necessarily be limited to the net income, especially if the interest given was for life only. Here, the first provision made by the testator, was a gift and bequest of all his estate, real and personal, to trustees, 'the income from which shall be devoted to the purposes' thereinafter mentioned, with power 'to sell any of his property and re-invest the proceeds whenever in the judgment of the trustees the interest of the trust will be promoted.' When, therefore, immediately there follows, the direction that so much of the *proceeds of the said property* shall be paid to Mrs. Thomson as she may deem 'necessary for the maintenance of herself and his niece, they living in such style as she may think best to promote their happiness and comfort during her lifetime,' it is impossible to refer the word 'proceeds' to anything but the income which he had just before devoted to the purposes of his will." (Italics supplied.)

So it is here. What else can the word "proceeds" refer to? How can there be a gift over of the trust estate in remainder to the daughters or their children, if the trust estate can be encroached upon or entirely consumed for the widow's support?

The reference in the proviso to the daughters' shares of the income of the trust as "proceeds," followed immediately in the gift-over clause by a reference thereto as "income," also plainly shows that testator used the word "proceeds" as meaning "income." The plain language of the will and codicil, as has been pointed out, gives the widow a right only to the income during her life, and gives the corpus over in remainder to the daughters or their children.

■ Nor can we hold, as the corporate trustee contends we should, that the provisions for the widow's support constitute a so-called "demonstrative" legacy of such amount from income or from both income and corpus as the trustees deem necessary for such purpose. The argument in support of this view is that because the provision is one for the widow's support it is payable at all events without regard to the directions contained in the will to pay out of income and to the rights of the daughters as remaindermen. It is character-

istic of a demonstrative legacy (a) that it is one for a certain sum of money payable out of a certain fund, and (b) that there be an intention that it is to be paid at all events. In In re Estate of Douglas, 149 Minn. 276, 278, 183 N. W. 355, 356, we said:

"* * * A demonstrative legacy is a money gift, made a charge on a specific fund and directed to be paid out of that fund, but payable at all events even if the fund fails, if the residue be sufficient. * * * In the event of failure of the fund, such a legacy becomes a general legacy. A specific legacy, on the other hand, fails if the specific fund or thing given fails."

Here, the provisions for the support of the widow did not constitute a demonstrative legacy, for the reasons that (1) no specified sum of money was given for the purpose—the amount was uncertain, because it depended upon the amount of income earned and because the amount of income to be paid to the widow in excess of the one-third thereof to which she was entitled absolutely was to be determined by the trustees in their discretion; and (2) it was not to be paid at all events, but *only* out of income. In re Estate of Douglas, *supra;* Spencer v. Spencer, 38 App. Div. 403, 56 N. Y. S. 460; Houston L. & T. Co. v. Campbell (Tex. Civ. App.) 105 S. W. (2d) 430. See, Delaney v. Van Aulen, 84 N. Y. 16, *supra.*

In Matter of Velie, 119 Misc. 15, 194 N. Y. S. 891, a will analogous to the one here directed the executors and trustees to set aside a fund sufficient to "guarantee" an annual "dividend" of $12,000, to pay the "income" from the fund to testator's widow in their discretion to keep the fund itself "intact," and at the widow's death to pay the fund in specified shares to his widow's heirs and to his two sons. The court held that the provisions for the widow did not constitute "a demonstrative legacy," because the amount was not definite, but in the discretion of the trustees, and because it was not to be paid at all events, but only out of income, and said (119 Misc. 16, 194 N. Y. S. 892):

"* * * So here, the testator's intention is evidenced by the use of the words 'such a portion of my estate as is necessary to guar-

antee an annual dividend of $12,000,' and by the words *income created from this fund'* in item 1. It is to be noted, also, that the word *'income'* was repeated by him in the 3d paragraph of the will. The provisions of the will indicate no intention to prefer the widow over his children who are designated as the remaindermen of this fund. If the corpus was permitted to be invaded to make up the deficiency, the entire fund would, in all probability, be exhausted before the death of the widow."

■ The corporate trustee urges that decision here is controlled by cases like Longwith v. Riggs, 123 Ill. 258, 14 N. E. 840, which it refers to as a leading case; Elder v. Elder, 50 Me. 535; and Brown v. Berry, 71 N. H. 241, 52 A. 870, which it contends involve similar wills and hold that support for a widow or children may be paid out of corpus. At the outset, it is well to remember that, aside from the general principles recognized in the construction of wills and the legal definition of certain terms, precedents are of little value in construing the language of a particular will. In re Estate of Freeman, 151 Minn. 446, 187 N. W. 411. Because every testator's circumstances are different from those of every other and because every testator's plan of disposition is made in the light of his own peculiar circumstances, it has been said that every will must be construed by itself to determine the particular testator's intention. The epigram "no will has a brother" (Ball v. Phelan, 94 Miss. 293, 330, 49 So. 956, 963, 23 L.R.A.[N.S.] 895; Matter of King, 200 N. Y. 189, 93 N. E. 484, 21 Ann. Cas. 412, 34 L.R.A.[N.S.] 945; 28 R. C. L., Wills, § 166) expresses the basic thought perhaps with inaccuracy born of oversimplification, but with sufficient precision for present purposes. We have examined the cases cited and find that the courts deciding them adhere to the rules we have stated; but that where there is a difference of result the cited cases involved fact situations different from the instant case. For present purposes, it is sufficient to point out the differences; it is not necessary to go so far as to indicate whether, if the instant case involved the same facts as those cited, we would follow them.

The case of Longwith v. Riggs, 123 Ill. 258, 14 N. E. 840, is authority for the proposition that corpus may be applied for support only, as it is there said (123 Ill. 265, 14 N. E. 843), *"if there is a clear intention,* to be gathered from the whole will, that the child is to have a maintenance, * * * although there is a gift over." (Italics supplied.) The authorities there cited (2 Perry, Trusts and Trustees [7 ed.] § 619, and Lambert v. Parker, Cooper [*Temp.* Eldon] 143), limit the right of encroachment upon corpus to cases where an intention authorizing it is clearly manifest. The will in the Longwith case provided for the division of the residue of testator's estate equally among his children and for a trust of an imbecile daughter's share for her support out of the income therefrom with gift over to the other children. Because the daughter was an imbecile and it was apparent that the trust was created for her maintenance and support, the court found, as pointed out in Johns v. Johns, 172 Ill. 472, 484, 50 N. E. 337, 341, that testator's *primary purpose* in creating the trust was to provide for the daughter's support and protection, and that because that was true, as there said, "the direction * * * as to the gift over was subordinate in his [testator's] mind to the maintenance of the beneficiary." Here, as has been pointed out, there was no intention to divide testator's estate between the widow and the daughters and to make the widow's share the source of her support as in the case of the imbecile daughter in the Longwith case, but rather a carefully worded plan to give the widow support from income only and to give the corpus in remainder to the daughters. There is as much reason here for holding that the testator's *primary purpose* was to give the entire corpus intact in remainder to his daughters as there is for holding that it was to provide for the widow's support. In fact, both intentions appear to be equal, and therefore both should be given effect. In cases like the instant one, the courts of Illinois do not regard the Longwith case as authority. In Einbecker v. Einbecker, 162 Ill. 267, 44 N. E. 426, it was held that, where an *annuity* for testator's widow was directed to be paid out of income and the corpus was given over, corpus could not be encroached upon if income was insufficient. The

rule is that an annuity, absent manifestation of a contrary testamentary intention, is payable out of corpus. 3 Page, Wills (Lifetime ed.) § 1173. In the Einbecker case the court did not cite nor distinguish the Longwith case, but in a learned opinion reviewed the authorities generally and said (162 Ill. 278, 44 N. E. 430):

"We think that a careful study of all the cases will show the existence of the distinction here pointed out; that is to say: where the terms of the will show the intention of the testator to be, that, at the death of the annuitant, the entire fund set apart for the payment of the annuity shall pass to those who are to take after the death of the annuitant, then the *corpus* cannot be drawn upon to make up deficiencies in the annuity; the terms of the will in the case at bar show such an intention on the part of the testator; but where the will provides, that the *residue* of the fund shall go to those who are to take after the death of the annuitant, or where it provides, that the fund shall be paid over 'subject to' the payment of the annuity, or 'after the payment' of the annuity, then the *corpus* will be liable for arrearages; there is no such provision in the will in the case at bar."

The Einbecker case has been followed in Illinois (Chicago T. & T. Co. v. Morey, 281 Ill. App. 219, 224; Schloesser v. Schloesser, 329 Ill. App. 604, 615, 70 N. E. [2d] 346, 351), and elsewhere. Lynn Safe D. & T. Co. v. Martin, 308 Mass. 443, 449, 32 N. E. (2d) 247, 250. In Stephens v. Collison, 274 Ill. 389, 113 N. E. 691, Ann. Cas. 1918D, 559, it was held that a court of equity has no power to alter the rights of beneficiaries *inter se,* which would of course render the Longwith case inapplicable here. Here, because there is no basis for finding a testamentary intention that if income should be insufficient for the widow's support corpus might be encroached upon for the purpose, the Longwith case can have no application. Furthermore, since the court which decided that case does not regard it as applicable in a case like the instant one, neither should we.

In Elder v. Elder, 50 Me. 535, 536, testator provided in his will that, having kept his family together until some of the children had

attained the age of 21 years and "wishing that my minor children may have the same privilege and assistance that the older children have enjoyed," his property should remain undivided until his youngest child should attain such age; that his dwelling during such time should continue to be the home of his family; that the income from his property should be appropriated for the support of his family (widow and seven children, five of whom were under age); and that, after the payment of a legacy, the remainder should be divided at the end of such period equally among the children, except that if his youngest child died before a certain date his share should be given to the other children. The will there differs from the one here, in that there the court was able to spell out that the will betokened an intention to support testator's minor children out of his entire estate with a direction to apply the income to their support, but without limiting the right of support to income; whereas here the will contains no such provisions as those from which the court there inferred such a testamentary intention, but on the contrary the will here clearly shows an intention to give the widow one-third of the income absolutely and so much of the other two-thirds thereof for her support as the trustees may deem necessary, with the corpus over intact to the daughters as remaindermen, thus limiting the widow's support to income only. There, in construing the will, the court said (50 Me. 546):

"It was manifestly the intention of the testator, 'that the privilege and assistance' of his minor children, till they should be able to support themselves, should be secured by a charge on the estate, before any division should be made."

Such being the case, it followed, as the court held, that it was a case where the amount ultimately to go to the beneficiary was "to be broken in upon" and diminished for the benefit of the infant beneficiaries. Of course, because of the difference between the wills, the one here involved is not susceptible of the same construction. Nor would it be, under the decisions of the Maine court, which has held that, where the will provides that payments for support are to be

paid out of income and the income is insufficient, support cannot be paid out of corpus. Wight v. Mason, 134 Me. 52, 180 A. 917; Veazie v. Forsaith, 76 Me. 172. In the Veazie case the court said (76 Me. 182):

"There is, however, another class of cases of equal authority with those just considered, and in fact, not inconsistent with them, in which it is held that a legacy when payable out of a specified fund, as from an income, whether an annuity or otherwise, is not a charge upon the principal from which that fund is derived, but must stand or fall with the fund itself. This is when both the legacy thus to be paid and that by which the principal is disposed of, are either, or both specific."

In discussing the leading case of Baker v. Baker, 6 H. L. Cases, 616, 56 Eng. Com. L. R. 691, holding that where an annuity to testator's widow was payable out of income it could not be paid out of corpus, the court further said (76 Me. 183):

"* * * The testator [in the Baker case] clearly intended that his wife should have the annual income of two hundred pounds during life or widowhood. It is equally clear that he intended that his brothers and sister should have the principal from which that income was to be obtained, that the principal should not be diminished while producing the income. Both these intentions could not be carried out. Which should fail? Evidently that [the provision for the annuity out of income] which of necessity must fail, that for which no sufficient means had been provided."

In Brown v. Berry, 71 N. H. 241, 245, 52 A. 870, 872, payments for support of testator's children and education of his grandchildren were directed to be made out of income, but there were numerous other provisions in the will, which here are lacking, from which the court was able to infer that testator's "leading purpose was that the necessary means should be furnished by his estate in any event"; that, since the will could not be executed according to its terms, the testator's general and primary intention would be given effect by construing the particular directions to be by way of "demonstration"

rather than of "condition"; and that, so construed, the payments were authorized to be made out of corpus if the income was insufficient. There is no general or primary intent here that the widow should be supported out of corpus. If anything is plain here, it is that only income shall be applied to the widow's support and that the entire corpus shall go at her death to the daughters. In Edgerly v. Barker, 66 N. H. 434, 452, 31 A. 900, 904, 28 L. R. A. 328, a case related to that of Brown v. Berry, the language used there with respect to the testator's intention, that his grandchildren should take the trust estate after the income had been paid to those entitled to it under the will, is apt as emphasizing here that testator's intention was that his daughters should take the corpus at his widow's death. It reads:

"A dominant idea of the residuary clause and of the whole will is, that the testator's grandchildren shall have the bulk of his estate. Not less dominant or less manifest is his determination that C. and H. shall not have it. His intent would not have been plainer if he had inserted a declaration that the grandchildren's remainder should not be transferred from them to C. and H. by judicial construction."

The case of Woody v. Christian, 205 N. C. 610, 172 S. E. 210, is not contra, but rather sustains the result we reach. There, the will provided that for a period of 20 years the trustee should pay the income from the trust monthly to his four sons in equal shares with remainder over at the end of such period to certain designated persons. The income was inadequate for the support of the sons because the estate had shrunk. In denying a supplemental allowance out of corpus, the court said (205 N. C. 616, 172 S. E. 213):

"It is contended by plaintiffs, appellants, that from examining the will that the intent and primary purpose of the testator in providing the trust estate was to see that his four sons were comfortably provided for during their lives. This contention is true, but the clear language of the will of the testator limits and shackles the trustee."

Here, while we cannot find that testator had any "primary" intention to provide for the widow's support without regard to the provision he made for his daughters, the clear language of the will limits and shackles the trustees as in the Woody case.

■ It being impossible to interpret the will as authorizing the trustees to encroach upon the corpus for the widow's support, the question remains whether the court can confer upon them the power to do so. In support of the affirmative it is argued that where a trustee lacks power to do an act either because the trust instrument did not grant it or because it even forbade it the court may grant the power, and, as it said, authorize the trustee to "deviate" from the terms of the trust. As applied here, the court would confer power upon the trustees to take the corpus from the daughters as the remaindermen to provide for the widow as one of the beneficiaries of the income of the trust during her life. The consequences of the application of the rule strongly suggest that it is nonexistent. The daughters took vested remainders of the corpus at testator's death. First & Am. Nat. Bank v. Higgins, 208 Minn. 295, 293 N. W. 585. The court lacks power to take property from one person and give it to another. A taking of property without authority of law is no less lacking in due process when it is done by the judicial department of the government rather than by some other department thereof. Brinkerhoff-Faris T. & S. Co. v. Hill, 281 U. S. 673, 50 S. Ct. 451, 74 L. ed. 1107.

In certain cases, under M. S. A. 501.22, the court may authorize a trustee to sell or mortgage. The statute provides that a sale, conveyance, or other act of a trustee in contravention of the trust is absolutely void. Here, the statute is not involved.

We do not deem it necessary to define the limits within which a court may confer power upon a trustee to deviate from the terms of the trust. Inaccuracy and misleading implication lurk in the expression "deviation from the terms of the trust." Rightly understood, it has no such meaning as the corporate trustee contends it has here. The same may be said of such expressions as that a court of equity

has the capacity of a "universal trustee." See, 54 Am. Jur., Trusts, § 276.

The primary function of the court in exercising jurisdiction over trusts is to preserve them and to secure their administration according to their terms. Just as the court lacks power to remake a will, it also lacks the power to remake a trust. It cannot take from one beneficiary and give to another; it cannot change the rights of the beneficiaries *inter se* by enlarging the rights of some at the expense of others. Hughes v. Federal Trust Co. 119 N. J. Eq. 502, 183 A. 299; Matter of Winthrop, 168 Misc. 861, 6 N. Y. S. (2d) 539; Pitts v. Rhode Island Hospital Trust Co. 21 R. I. 544, 45 A. 553, 48 L. R. A. 783, 79 A. S. R. 821; Stewart v. Hamilton, 151 Tenn. 396, 270 S. W. 79, 39 A. L. R. 37; Will of Stack, 217 Wis. 94, 258 N. W. 324, 97 A. L. R. 316; Restatement, Trusts, § 168*d;* 2 Scott, Trusts, §§ 167 (note 20), 168 (notes 7 and 8). In 4 Bogert, Trusts and Trustees, § 815, it is said:

"* * * The court will not, for example, order a sale of realty which was to go to a remainderman cestui and thus alter the nature of his enjoyment, when no emergency calls for this decree. It will not under any circumstances increase the size of the cestui's interest, as where it is asked to order a sale of capital in order to pay part of the proceeds to a life tenant who was given income only."

As said in 54 Am. Jur., Trusts, § 279:

"* * * Equity may interpose its protective authority whenever it appears that the trustee is perverting his powers to the detriment of the cestui que trust. It will assume jurisdiction in a proper case to compel the trustee to administer the trust, or to appoint a substitute or successor trustee. But a court should exercise its jurisdiction over the administration of a trust, as a general rule, not to remake the trust instrument, reduce or increase beneficial interests created thereby, or accord beneficiaries more advantage than the trustor intended, but rather to effect the administration of the trust in accordance with its terms and directions in the manner laid down by the

trustor. Certainly a court should not substitute its judgment for the judgment and wishes of the trustor."

Deviation may be authorized with respect to matters of administration, but not of beneficial rights of parties. Stewart v. Hamilton, 151 Tenn. 396, 270 S. W. 79, 39 A. L. R. 37, *supra;* 3 Bogert, Trusts and Trustees, § 561.

Where an unanticipated situation arises preventing execution of the trust according to its terms, deviation is permitted to preserve the corpus by changing its form, but not to change the rights of the parties under the trust, or in case of extreme exigency to enable a beneficiary of income to anticipate corpus to which he is ultimately entitled. For example, in Mayall v. Mayall, 63 Minn. 511, 514, 65 N. W. 942, 943, where the trust *res* consisted of real estate, on which the buildings had become of little value and untenantable and from which sufficient income could not be derived to pay carrying charges, with the consequence that unless sold, leased, or improved the property would be lost, but which by reason of change of character of the locality had become valuable for business purposes, and the trust instrument contained no power to sell, mortgage, or otherwise dispose of the property, we held that the court had the power to authorize the trustee to sell, mortgage, or otherwise dispose of the trust property in order "to preserve the trust from destruction," even though the trustee lacked such power under the trust instrument. We said that the court's power rests upon considerations of necessity and "high expediency." Numerous similar cases are cited in 2 Scott, Trusts, § 168, and 3 Bogert, Trusts and Trustees, § 561. The rationale of the rule permitting deviation in such cases is as stated in Pennington v. Metropolitan Museum of Art, 65 N. J. Eq. 11, 22, 55 A. 468, 472, and quoted by Bogert, as follows:

"If trustees disclose a situation of their trust in which a slavish adherence to the terms of the trust will operate to wholly prevent the benefits intended by its creator, and they seek instructions and directions as to their duty, I think that instruction and directions for a course of conduct which, though differing from that prescribed

by the terms of the trust, will actually carry out the intent of the creator, may well be grounded upon and sustained by the necessity of the case. The benefits intended for the beneficiaries are the main subjects of consideration. The modes in which those benefits may be attained are incidental, and necessity may require a change of mode to produce the intended effect. The power of the court may well be exercised in a case of evident necessity."

But where a sale is authorized as a deviation from the terms of the trust, the rights of the parties remain the same, except that they are transferred from the property to the proceeds of the sale thereof. Beliveau v. Beliveau, 217 Minn. 235, 14 N. W. (2d) 360; Stewart v. Hamilton, 151 Tenn. 396, 270 S. W. 79, 39 A. L. R. 37; Ruggles v. Tyson, 104 Wis. 500, 79 N. W. 766, 81 N. W. 367, 48 L. R. A. 809; Will of Stack, 217 Wis. 94, 258 N. W. 324, 97 A. L. R. 316. As Mr. Justice Mitchell said in the Mayall case (63 Minn. 514, 65 N. W. 943):

"* * * The power of the court is exercised, not to defeat or destroy the trust, but to preserve it. Even in case of an absolute sale, the trust is not destroyed. * * * The proceeds are impressed with the trust, and are to be administered in accordance with its terms, under the direction of the court."

Anticipation of corpus—that is, encroachment upon the corpus of the trust estate in advance of the time of distribution fixed by the trust instrument—is permitted in cases of extreme emergency, such as where the needs of an infant and sometimes of an adult beneficiary are involved, but the doctrine is strictly limited to present use of property to which the beneficiary is ultimately entitled. In re Lucey, 98 N. J. Eq. 314, 128 A. 677; Matter of Renn, 177 Misc. 195, 29 N. Y. S. (2d) 410; Post v. Grand Rapids Trust Co. 255 Mich. 436, 238 N. W. 206. In Stephens v. Howard's Executor, 32 N. J. Eq. 244, 247, the court said:

"* * * The source of the power it is easy to trace. It is found in the fact that the infant is the absolute owner of the property, no other person having either a present or prospective legal interest

in it, and that, if the present enjoyment of the property is withheld, the infant must suffer, possibly for the advantage of some person who has no interest in the infant, and was never thought of by the testator as a possible recipient of his bounty."

Anticipation of corpus has been said to "merely touch the management or mode of user." Bennett v. Nashville Trust Co. 127 Tenn. 126, 129, 153 S. W. 840, 841, 46 L.R.A.(N.S.) 43, Ann Cas. 1914A, 1045. But the court may not under the guise of authorizing anticipation of corpus take from one beneficiary and give to another. As said in 3 Bogert, Trusts and Trustees, § 562, p. 504:

"* * * The court's power does not extend to the case where the trustee requests that he be allowed to take the property of cestui A and give it to cestui B, or where he seeks to make a contingent future interest a present vested one."

It follows as a necessary corollary that where income given to a surviving spouse or child is inadequate and the corpus is given over, there can be no encroachment upon corpus to make up deficiencies in income to take care of the needs of such spouse or child. First Nat. Bank v. Levy, 123 N. J. Eq. 21, 195 A. 820; Fidelity Union Trust Co. v. J. R. Shanley Estate Co. 113 N. J. Eq. 562, 167 A. 865; Delaney v. Van Aulen, 84 N. Y. 16; Matter of Rounds, 252 App. Div. 10, 297 N. Y. S. 263; Woody v. Christian, 205 N. C. 610, 172 S. E. 210.

The cases cited by the corporate trustee either are not in point or should not be followed for other reasons. In Hardy v. Bankers Trust Co. 137 N. J. Eq. 352, 44 A. (2d) 839, all the beneficiaries consented to the decree. That fact affords a basis for the decision there (30 Minn. L. Rev. 553) and distinguishes that case from the instant one, for the reason that here the remaindermen not only do not consent, but positively object. In In re Lucey, 98 N. J. Eq. 314, 128 A. 677, the court denied infants the right to encroach upon corpus for the reason that they were not absolutely entitled to it. A similar decision was rendered in Smith v. Robinson, 83 N. J. Eq. 384, 389, 90 A. 1063, 1065, where the court said:

"Payments, whether authorized in advance or afterwards ratified by a competent court, can only be lawfully made out of the property of the beneficiary to or for whom the advances are made. They can never be paid to the tenant of a particular estate out of the *corpus* of property which is to go to remaindermen after an estate for life or years."

In Matter of Bostwick, 4 Johns. Ch. (N. Y.) 100, the advancement was authorized for infants out of property to which they were ultimately entitled.

The case of Matter of Muller, 29 Hun (N. Y.) 418, sustains the corporate trustee's contention.. We refuse to follow it because it was rejected as an authority in Matter of Renn, 177 Misc. 195, 29 N. Y. S. (2d) 410, and because, as pointed out in Brandt v. Continental B. & T. Co. 43 N. Y. S. (2d) 255 (affirmed, 267 App. Div. 890, 47 N. Y. S. [2d] 589), it was overruled *sub silentio* by the court of appeals in Douglas v. Cruger, 80 N. Y. 15, and Lent v. Howard, 89 N. Y. 169, and has not been followed in later cases decided by the courts of New York. In the Brandt case the court concluded (43 N. Y. S. [2d] 258) :

"As to the Muller case, supra, it cannot be reconciled with the firmly grounded and consistent holdings, as illustrated by the cases, supra, to the effect that the court is wanting in authority to permit an invasion of the corpus of the trust funds, and I feel that in the circumstances this court should bow to the overwhelming weight of authority. I am of the opinion that to direct the deviation sought would amount to a destruction of the trust."

Our own view is that the Muller case so far as it is opposed to the views herein expressed is unsound in principle. Since the courts of the state where that case gained currency have seen fit to reject it as an authority, we should do likewise in view of the fact that the case is opposed to sound principle.

McAfee v. Thomas, 121 Or. 351, 255 P. 333, is not in point, for the reason that the will there involved contained a provision, lacking here, which the court there found (121 Or. 357, 255 P. 335) showed

that the testator did not discriminate between income and corpus. Furthermore, the authorities there cited do not sustain the opinion. The opinion cites 30 Am. & Eng. Enc. of Law (2 ed.) 667, in support of the view that where because of changed conditions a will cannot be executed according to its terms, corpus may be used for payments directed to be made out of income. The text cited does not so read, but simply states that in such a case "the court will approximate the scheme enunciated as far as possible." It does not say that corpus may be appropriated for payments which are to be made out of income, which, as we have pointed out, is quite a different matter. The opinion cites 3 Woerner, Am. Law of Adm. (3 ed.) 1581, 1582, in support of the view that "the court will allow maintenance for the infant out of the capital fund, even when inconsistent with the disposition made by the testator." Woerner cites Matter of Bostwick, 4 Johns. Ch. (N. Y.) 100; Ex parte Green, 1 Jac. & W. 253; Swift v. Swift, 1 Russ. & Myl. 575; and Matter of Muller, 29 Hun (N. Y.) 418, the first three of which were cases where corpus to which infants were ultimately entitled was authorized to be used for present support because of extreme urgency. Here, the widow was not ultimately entitled to the corpus, and consequently it could not be used for her benefit. What we have said about the Muller case disposes of it. It is not clear from Woerner's text that the author meant to state the rule differently.

We think that we have referred to the other cases cited by the corporate trustee in other parts of the opinion. Except for the Muller case, which we have discussed and refuse to follow, none of them sustain its contentions.

Our conclusion is that under the will the widow's support cannot be paid out of corpus and that it was error to order it to be so paid.

Reversed with directions to proceed in accordance with the opinion.